**Michael R. ALLISON, et al., Respondents,**

v.

**SHERBURNE COUNTRY MOBILE HOME PARK, Appellant.**

No. C2–91–285.

Court of Appeals of Minnesota.

Oct. 8, 1991.

Michael R. Allison, et al., pro se.

Dewey M. Nelson, James E. Olds, Ltd., Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Michael Allison and Kathy Otten sued Sherburne Country Mobile Home Park (Sherburne) in conciliation court, claiming that Sherburne's $7.50 monthly service charge for electricity violated Minn.Stat. § 327C.04 (1990). The conciliation court ordered judgment for Allison and Otten. Sherburne filed for removal to district court. The district court entered judgment for Allison, holding that Sherburne's service fee for supplying electricity to its tenants violated Minn.Stat. § 327C.04, subd. 4. On appeal, Sherburne challenges the district court's application of the statute to the electricity service charge. We reverse and order judgment for Sherburne.

## FACTS

Michael and Kathleen Wadsworth own Sherburne Country Mobile Home Park in Princeton, Minnesota. Michael Allison and Kathy Otten rent from Sherburne pursuant to a lease providing that Sherburne will provide its tenants with electricity. Sherburne owns and maintains an electrical distribution system in the mobile home park. It purchases electricity from Anoka Electric Cooperative (Anoka) and, pursuant to the lease, resells the electricity to its tenants. Sherburne charges each tenant a monthly service charge of $7.50, together with regular metered use, plus taxes.

Sherburne requires that all of its approximately 94 tenants pay the $7.50 monthly service charge for the electricity, for a total of approximately $747.30. Anoka's general rates provide that its regular "single phase" customers pay a monthly $7.50 service charge, while "three phase" customers pay a monthly $17.05 service charge. In order to provide electricity to its tenants, Sherburne operated two "single phase" and two "three phase" meters. This meant that Sherburne paid to Anoka $49.10 plus tax in monthly service charges. If the mobile home residents purchased their electricity directly from Anoka Electric Cooperative, each home would have to pay the $7.50 service fee.

## ISSUE

Did the trial court err in holding that Sherburne's $7.50 service charge violated Minn.Stat. § 327C.04 (1990)?

## DISCUSSION

### Standard of Review

When reviewing questions of law, the appellate court need accord no deference to the district court's determination. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579, 582 (Minn.1977). Where the trial court applies the law to undisputed facts, the reviewing court may treat that determination as a matter of law and need not show deference. *Yost v. Millhouse*, 373 N.W.2d 826, 829 (Minn.App.1985). Further, where the lower court applies statutory language to the facts of a case, its conclusion is a matter of law and does not bind the appellate court. *Nhep v. Roisen*, 446 N.W.2d 425, 426 (Minn.App.1989), *pet. for rev. denied* (Minn. Dec. 1, 1989).

I

Minn.Stat. ch. 327C (1990) is entitled "Manufactured Home Park Lot Rentals." Section 327C.04, subdivisions 3 and 4, provide:

Subd. 3. Permissible rates. *Except as provided in subdivision 4,* no park owner shall, directly or indirectly, charge or otherwise receive payment from a resident for a *utility service,* or require a resident to purchase a *utility service* from the park owner or any other person, at a rate which is greater than either of the following:

(a) *a rate which the resident could pay directly for the same utility service from some other comparable source in the same market area;* or

(b) a rate which is charged to single family dwellings with comparable service within the same market area.

Subd. 4. Electricity. If a park owner provides electricity to residents by reselling electricity purchased from a public or municipal utility or electrical cooperative, *and compliance with subdivision 3 would cause the park owner to lose money on the sale of electricity,* the park owner may bill residents at a rate calculated to allow the park owner to avoid losing money on the sale of electricity. *In calculating the cost of providing electricity, the park owner may consider only the actual amount billed by the public utility or electrical cooperative to the park owner for electricity furnished to residents. The park owner may not consider administrative, capital or other expenses.*

(Emphasis added.)

The parties dispute the application of Minnesota Statutes § 327C.04, subdivisions 3 and 4. Allison and Otten claim that subdivision 4, not subdivision 3, applies to the case. They allege that under subdivi-

sion 4, Sherburne may not charge its tenants more for electricity than Anoka charges Sherburne. Although Sherburne pays only approximately $49.10 in monthly service charges to Anoka, Sherburne requires that each of its approximately 94 residents pay a $7.50 service charge, for a total monthly service charge revenue of approximately $745. Allison and Otten claim that this violates subdivision 4 by charging the residents more than Anoka charges Sherburne.

Sherburne counters that subdivision 3, not subdivision 4, applies and that it has complied with subdivision 3. Sherburne alleges that subdivision 3 merely requires that it charge residents no more than they would pay if they received service directly from Anoka. Because Anoka would require a $7.50 service fee from all residents receiving direct service, Sherburne claims its identical service charge is valid.

Minn.Stat. § 645.16 (1990) provides, "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." In construing a provision of a statute, we look to the statute as a whole and give effect to all of its provisions. *Petition of Minnesota Power & Light Co.*, 435 N.W.2d 550, 556 (Minn.App.1989), *pet. for rev. denied* (Minn. Apr. 19, 1989). *See Kachman v. Blosberg*, 251 Minn. 224, 87 N.W.2d 687, 692 (1958) (statutory provision "cannot be read out of context but must be taken together with other related provisions to determine its meaning"). We interpret statutory provisions in light of each other and presume that the legislature understood the effect of the statutory language. *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 74, 93 N.W.2d 690, 698 (1958).

Minnesota Statutes Section 327C.04, subdivisions 3 and 4, must be read together and we must give effect to both. Subdivision 3 applies to park owners who provide utility services to residents. Minn.Stat. § 327C.01, subd. 12, includes electricity in its definition of "utility service." The "except as provided in subdivision 4" language of subdivision 3 indicates that subdivision 3 is a general rule, subject to an exception stated in subdivision 4.

Subdivision 4 acts as a limitation on the amount park owners may charge residents for electricity, but.applies only when the park owner is providing electricity at a loss. If a park owner loses money in providing electricity to residents, the owner may raise the rates to break even but, in calculating costs, may consider only what the public utility charges the owner, and not other expenses. Thus, when suffering losses in providing electricity to residents, the amount that the park owner charges residents may not exceed the amount that the public utility charges the park owner.

Because Sherburne made no claim that it operated at a loss in providing electricity to its residents, subdivision 4 does not apply in this case. Sherburne's service complies with the requirement in subdivision 3(a) that the owner charge residents no more than the residents would pay directly to the public utility for the same service.

## DECISION

We hold that Minn.Stat. § 327C.04, subd. 3, applies to Sherburne's $7.50 service charge for the provision of electricity to its residents and that Sherburne complied with that provision. We further hold that Minn. Stat. § 327C.04, subd. 4, applies only when a park owner suffers a loss on the sale of electricity to residents and does not apply in this case. We reverse the trial court and order judgment to be entered for Sherburne.

Reversed.