STATE of Minnesota, Respondent,

v.

Gary Meland GRIFFITH, Sr., Appellant.

No. C3-91-263.

Court of Appeals of Minnesota.

Jan. 28, 1992.

Review Denied March 19, 1992.

Deborah K. Ellis, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Robert M.A. Johnson, Anoka County Atty., Barbara Harrington, Marcy S. Crain, Asst. County Attys., Anoka, for respondent.

Considered and decided by SHORT, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

SCHUMACHER, Judge.

A jury found appellant guilty of two counts of criminal sexual assault in the third degree and one count of criminal sexual assault in the fourth degree. Appellant was sentenced on one of the third-degree counts. The sentencing judge departed upward durationally from the presumptive sentence of 48 months executed to a sentence of 72 months executed. Appellant alleges the evidence was insufficient to support the convictions, the trial court erred in excluding certain evidence, and the sentence departure is not justified. We affirm.

## FACTS

The conduct complained of occurred approximately two weeks after complainant moved in with appellant and his family. Complainant, then age 17, was the best friend of appellant's daughter, and shared a room with her. Appellant's wife and their two sons also lived in the house. Appellant's wife was not at home on the evening the alleged incident occurred.

On February 15, 1990, complainant and appellant's daughter had two other friends over to the house. The four girls and appellant were drinking a case of beer that appellant had purchased. It appears the complainant drank about 4–5 beers and appellant drank 9–12 beers.

Complainant eventually left the group and went downstairs. Appellant testified that he found complainant sitting on the floor with a blank look on her face. When he could not get her to respond to his questions, appellant lifted complainant onto the couch. Appellant's daughter and son testified that they saw appellant's hand inside complainant's shirt around the chest area while she was "passed out."

Appellant's daughter and the other two girls helped complainant up the stairs and put her into bed. The girls did not carry complainant. Complainant took her shoes off, but left the rest of her clothes on.

About twenty minutes later, appellant's daughter found complainant vomiting onto the floor as she lay on the bed. Appellant and appellant's daughter began cleaning up the mess. Appellant sent his daughter out of the room on a few occasions for cleaning supplies or to rinse out the rags. Complainant testified that each time appellant's daughter left the room, appellant would insert his finger in her vagina through a hole in the crotch area of her pants. After they had finished cleaning, appellant and appellant's daughter left the room and complainant fell back to sleep.

Complainant later awoke to find that appellant had removed her pants and underwear and was kneeling over her, unbuttoning his own pants. Complainant testified that appellant performed cunnilingus on her and then penetrated her vagina with his penis. He rubbed his penis on complainant's lips and ejaculated on her face. He then wiped the semen off complainant's face with a tissue, and left the room.

Appellant's daughter awoke to find complainant crying, and she persuaded complainant to tell her what was wrong. Appellant's daughter testified that complain-

ant wiped some remaining semen from her face onto her pillowcase.

Complainant left appellant's house the next day and moved in with a friend. Two days later, complainant moved out of this friend's house and moved in with another friend. Complainant told both girls about the alleged incident. After she had told the second friend, complainant attempted to cut her wrists, and the police were called. The two girls then told the police what complainant had told them about the incident. Appellant's wife gave an investigator the pillowcase from appellant's daughter's bedroom. The stains on the pillowcase tested positive for the presence of semen. The tests could not exclude appellant as the source.

Appellant was charged with two counts of criminal sexual conduct in the third degree (Minn.Stat. § 609.344, subd. 1(d) (1990) and one count of criminal sexual conduct in the fourth degree (Minn.Stat. § 609.345, subd. 1(d) (1990)). Appellant received a jury trial in Anoka County District Court.

The trial court excluded evidence of a sexual encounter the complainant had allegedly engaged in with another man between February 15th and 19th. The jury found appellant guilty on all counts. Appellant was sentenced to 72 months on one count of criminal sexual assault in the third degree, a departure from the presumptive 48 months.

## ISSUES

1. Is the evidence sufficient to support appellant's conviction for third-degree sexual assault?

2. Is the evidence sufficient to support appellant's conviction for fourth-degree sexual assault?

3. Did the trial court err in excluding evidence of the complainant's alleged sexual conduct subsequent to the night the alleged incident occurred?

4. Did the trial court err in departing upward durationally from the presumptive sentence?

## ANALYSIS

I. Whether the evidence at trial was sufficient to support the conviction for third-degree sexual assault.

The appellate court must view the evidence in a light most favorable to the prosecution when reviewing claims of insufficient evidence. *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984). The reviewing court must assume the jury believed the prosecution witnesses and disbelieved any contrary evidence. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981).

The judge instructed the jury that in order to find the appellant guilty of criminal sexual conduct in the third-degree, they must conclude that the appellant engaged in sexual penetration with the complainant when he knew or had reason to know she was physically helpless. The judge further instructed the jury:

"Physically helpless" means that a person is (a) asleep or not conscious, (b) unable to withhold consent or to withdraw because of a physical condition, or (c) unable to communicate non-consent and the condition is known or reasonably should have been known to the actor.

The jury found that the complainant met this definition.

Appellant argues that because the complainant was awake and aware at the time of the penetrations, she could not have been "physically helpless" as required under Minn.Stat. § 609.345, subd. 1(d). Appellant cannot, however, point to any testimony demonstrating that the complainant *could* have said "no" or "stop," only testimony that she *didn't* voice her non-consent. The jury was not required to infer that because the complainant was awake and aware of the penetrations she could have effectively withdrawn from the attack.

Moreover, there were portions of the complainant's testimony indicating that she was, in fact, "unable to withdraw because of a physical condition." On redirect, the complainant testified as to the digital penetration that allegedly occurred as the appellant and appellant's daughter were in

the process of cleaning up complainant's vomit:

> Q: * * * when [appellant] was in the bedroom cleaning up the vomit and [appellant's daughter] would return, you never told [appellant's daughter] to wait or stay here or anything like that, do you recall that set of questions?
>
> A: Yes.
>
> Q: Why not?
>
> A: Because I just didn't say anything. *I couldn't say anything.* I didn't talk. I didn't talk all night.

Also, on redirect about the last episode of the attack, complainant indicated an inability to withdraw:

> Q: Why didn't you want him to know you were awake?
>
> A: Because I didn't. I have never had something like this happen to me before. It was like it's—*I didn't know what to do. What are you supposed to do,* get up and start beating him? God—

This testimony indicates that the complainant felt helpless to stop the attack. The jury could have inferred that this "helplessness" was due to her "physical condition"—drunkenness, fatigue, sickness—of which the appellant was aware. These two statements are enough to support the conviction.

II. Whether the evidence was sufficient to support a conviction for fourth-degree sexual assault.

■ The evidence clearly was sufficient to support the fourth-degree conviction. Two witnesses testified that they saw appellant's hand up the complainant's shirt when she was either asleep or "passed out" in the basement of the house.

III. Whether the trial court erred in excluding evidence of the complainant's sexual contact with another individual between February 16th and February 19th?

■ Evidentiary rulings rest in the discretion of the trial judge and will not be reversed absent a clear abuse of discretion.

*State v. Kobow,* 466 N.W.2d 747, 750 (Minn.App.1991) *pet. for rev. denied* (Minn. Apr. 18, 1991). Minn.Stat. § 609.347 (1990) allows for admitting evidence of the victim's previous sexual conduct only when consent is a defense or when such evidence is relevant to determine the source of the semen, pregnancy or disease. The trial court must balance the probative value of a piece of proffered evidence against the likelihood and extent of prejudice accompanying that evidence. Minn.R.Evid. 403.

In the present case, the semen that was at issue was found on the victim's pillowcase, in her bedroom, and in the home of the appellant. The appellant could offer nothing linking the complainant's subsequent sexual conduct to this semen. The complainant had moved out of the home, and there was nothing to link the subsequent conduct to the semen found on the pillowcase. It was not an abuse of discretion for the trial court to decide that the limited probative value of this evidence was outweighed by the distinct possibility of the substantial prejudice it could create.

IV. Whether the trial court abused its discretion by an upward durational departure of 50% from the presumptive sentence for the offense of third-degree criminal sexual assault.

■ When faced with a decision whether to depart from the presumptive sentence, the court should decide whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime charged. *State v. Cox,* 343 N.W.2d 641, 643 (Minn.1984). Several factors lead the trial court to decide appellant's conduct was significantly more egregious.

Appellant ejaculated on the victim's face. This was particularly demeaning and humiliating, and went beyond the inherent humiliation a victim of third-degree criminal sexual assault must experience. *See Ture v. State,* 353 N.W.2d 518 (Minn.1984) (departure justified on grounds that the defendant there had ejaculated into the victim's mouth).

The sentencing court also mentioned the appellant's violating a position of trust as a basis for the departure. This has been held a valid basis for a durational departure. *State v. Skinner,* 450 N.W.2d 648, 654 (Minn.App.1990) *pet. for rev. denied,* (Minn. Feb. 28, 1990). The victim certainly would not have moved in with the appellant and his family if she thought he would attack and rape her. She *trusted* that he would not. Appellant took advantage of that trust when he attacked her.

The sentencing judge alluded to the fact that appellant had invaded the victim's zone of privacy to attack her. This can also be used as a departure factor. *State v. Van Gorden,* 326 N.W.2d 633, 635 (Minn.1982). Complainant had a reasonable expectation of privacy in her bedroom, even though it was in appellant's home.

The fact that there were multiple types of penetration could be grounds for an upward departure. *State v. Yanez,* 469 N.W.2d 452, 456 (Minn.App.1991), *pet. for rev. denied* (Minn. June 19, 1991). Appellant misstates the law in asserting that penetrations into different *orifices* is required before a departure for multiple types of penetrations will be proper. Different *types* of penetration into the same orifice are possible, and can be grounds for departure.[1] In this case, there were three different types of vaginal penetration—digital, cunnilingus, and intercourse—and the sentencing judge could depart on these grounds.

## DECISION

The evidence at trial revealed that the complainant was visibly intoxicated to the point of vomiting just prior to the attacks. Furthermore, the complainant's testimony indicated her inability to effectively withdraw. The evidence clearly was sufficient to support the convictions. The trial court did not err in excluding the evidence of complainant's alleged sexual contact with a third party when there was no evidence to link this alleged activity with the semen

found at the scene of the incidents. There were ample facts in the record to support the upward durational departure from the presumptive sentence.

Affirmed.

---

1. *See e.g., Moss v. State,* 324 N.W.2d 372, 377 (Minn.1982), noting cunnilingus as another type of penetration which would justify departure.