**STATE of Minnesota, Appellant,**

v.

**Shu Dian PENG, Respondent.**

**No. C0–94–1238.**

Court of Appeals of Minnesota.

Nov. 15, 1994.

Hubert H. Humphrey, III, St. Paul, Robert M.A. Johnson, Anoka County Atty., M. Katherine Doty, Asst. County Atty., Anoka, for appellant.

Michael P. Gallagher, Minneapolis, for respondent.

Considered and decided by SHORT, P.J., and PARKER, and JONES [*], JJ.

## OPINION

PHYLLIS GENE JONES, Judge.

This prosecution appeal is from a pretrial order dismissing four counts of an eight-count complaint for lack of probable cause. *See State v. Diedrich,* 410 N.W.2d 20, 22 (Minn.App.1987) (dismissal for lack of probable cause based on statutory interpretation is appealable). Respondent Shu Dian Peng has filed a cross-appeal from the trial court's ruling that there is probable cause to charge him with the remaining four counts. We reverse that part of the order dismissing four counts and affirm the refusal to dismiss the remaining counts.

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

Respondent Shu Dian Peng, who was employed as an acupuncturist at the Fridley Chiropractic Clinic, was charged with eight counts of fourth degree criminal sexual conduct. The complaint alleges that Peng engaged in sexual contact with two acupuncture patients, L.J. and L.W., during August 1993.

The complaint alleges that Peng touched the breasts of L.J. and the breasts and vaginal area of L.W. while each woman was lying on a table in the clinic. Peng had inserted acupuncture needles into the women's legs and other areas of the body before the alleged sexual contact occurred.

Peng moved to dismiss all eight counts for lack of probable cause. The motion was based on claims that neither victim was "physically helpless," and that Peng was not a health care professional authorized to provide therapy for a "medical purpose." *See* Minn.Stat. § 609.345, subd. 1(d) (actor knows complainant is physically helpless), (k) (actor accomplishes sexual contact by means of a false representation that contact is for a bona fide medical purpose) (Supp.1993).

The trial court dismissed the four counts alleging sexual conduct against a "physically helpless" victim. The court ruled that the element of physical helplessness requires an inability to communicate nonconsent. The court noted that both victims, although in pain, could communicate nonconsent, and that L.J. had done so. The court declined to dismiss the remaining four counts. The state filed this appeal, and Peng has filed a cross-appeal. This court has denied the state's motion to dismiss the cross-appeal, which is treated in this opinion.

## ISSUES

1. Does the statutory prohibition against sexual contact on a "physically helpless" victim apply to conduct against an acupuncture patient?

2. Does appellant's alleged conduct fall within the definition of sexual contact by

pointment pursuant to Minn. Const. art. VI, § 10.

misrepresentation of a bona fide medical purpose?

### ANALYSIS

■ 1. The state argues that the trial court erred in concluding that an acupuncture patient is not "physically helpless" within the meaning of Minn.Stat. § 609.341, subd. 9 (1992). The construction of a statute is a question of law for the court, and is subject to de novo review on appeal. *State v. Moore,* 431 N.W.2d 565, 567 (Minn.App.1988).

A person commits fourth degree criminal sexual conduct when engaging in sexual contact if

. (d) the actor knows or has reason to know that the complainant is mentally impaired, mentally incapacitated, or *physically helpless.*

Minn.Stat. § 609.345, subd. 1(d) (1992) (emphasis added). "Physically helpless" is defined as being

(a) asleep or not conscious, (b) unable to withhold consent *or to withdraw* because of a physical condition, or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor.

Minn.Stat. § 609.341, subd. 9 (1992) (emphasis added).

The trial court, citing a former version of CRIMJIG 12.08, held that the statutory element of physical helplessness relates to the victim's mental activity and the ability to communicate nonconsent. *See* 10 Minn. Practice CRIMJIG 12.08 (1985). The statute formerly included the language "physically unable to communicate unwillingness to act." Minn.Stat. § 609.341, subd. 9 (1980) (amended 1982). The statute, however, no longer focuses exclusively on the inability to communicate nonconsent. The legislature in 1982 amended the statute to include victims who are "unable * * * to withdraw because of a physical condition." 1982 Minn.Laws ch. 469, § 9. The pattern jury instruction has been amended to include the same class of victims. 10 Minn. Practice CRIMJIG 12.08 (Supp. 1994).

■ Penal statutes are to be strictly construed in favor of the defendant. *State v.*

*Serstock,* 402 N.W.2d 514, 516 (Minn.1987). But this does not require the court to "assign the narrowest possible interpretation to the statute." *State v. Zacher,* 504 N.W.2d 468, 473 (Minn.1993).

This court has interpreted the definition of "physically helpless" as applying to a situation where "the complainant felt helpless" because of a physical condition "to stop the attack." *State v. Griffith,* 480 N.W.2d 347, 350 (Minn.App.1992), *pet. for rev. denied* (Minn. Mar. 19, 1992). *Griffith* supports a broader construction of the statute than that applied by the trial court.

■ The trial court read the statutory definition narrowly as referring only to the victim's "ability to communicate nonconsent." This meaning, however, is already conveyed in Minn.Stat. § 609.341, subd. 9(c) ("unable to communicate nonconsent"). The trial court's interpretation renders the phrase "unable * * * to withdraw" in subdivision 9(b) superfluous. Such a construction, which would give no effect to that part of the statute, is to be avoided. *See Allison v. Sherburne County Mobile Home Park,* 475 N.W.2d 501, 504 (Minn.App.1991) (statute should be construed to give effect to all of its provisions).

If the legislature had intended the term "withdraw" to refer only to withdrawal of consent, it could have used the phrase "withdraw consent." Moreover, if the statute is read with that limitation, the 1982 amendment effected no substantive change in the definition. *Cf. Shreve v. Department of Economic Sec.,* 283 N.W.2d 506, 508 (Minn.1979) (statutory amendment is presumed to have been intended to effect some change in the law).

We conclude that the statutory phrase "unable * * * to withdraw" applies to a victim's inability to withdraw from the physical contact imposed upon her. Thus, Peng's alleged conduct in this case against women whose movements were restricted by the pain felt or anticipated from the acupuncture needles cannot be excluded as a matter of law from the statutory provision.

2. Peng argues in his cross-appeal that because he is unlicensed, because acupuncture is not recognized in Western medicine, and because sexual contact could not conceivably be justified for a "stop smoking" treatment, the charges under Minn.Stat. § 609.345, subd. 1(k) should have been dismissed.

The fourth degree criminal sexual conduct statute prohibits sexual contact if

the actor accomplishes the sexual contact by means of false representation that the contact is for a bona fide medical purpose.

Minn.Stat. § 609.345, subd. 1(k) (Supp.1993).

The supreme court has discussed the construction of an earlier version of this statute, stating that

[the statute] clearly applies to any act of sexual penetration or contact accomplished by means of a false representation that it is for a bona fide medical purpose.

*State v. Poole,* 499 N.W.2d 31, 34 (Minn. 1993).

The state alleges that Peng was employed at a chiropractic clinic to give acupuncture treatment to patients referred to him by his employer, the chiropractor. The state claims that Peng held himself out to be a "doctor" and represented that his acupuncture treatment could cure various ailments. Peng may challenge these assertions, but the factual issues he raises do not place his alleged conduct outside the scope of the statutory prohibition.

The state may have no evidence of an explicit representation that the sexual contact was for a medical purpose. We cannot, however, construe the statute so narrowly as to require an explicit representation of medical purpose. Medical treatment by its nature rests on implied representations of medical purpose. Even the gynecologist-defendant in *Poole* made explicit representations of "bona fide medical purpose" only for the most intrusive of his acts. *See Poole,* 499 N.W.2d at 33. Most medical treatment relies on the implicit representation that what occurs on the examining table is for a medical purpose. *See State v. Poole,* 489 N.W.2d 537, 542 (Minn.App.1992) (entire medical examination is implicitly for medical purposes),

*aff'd State v. Poole,* 499 N.W.2d 31 (Minn. 1993). We conclude the trial court did not err in declining to dismiss the four counts alleging sexual contact by means of a false representation of a bona fide medical purpose.

## DECISION

The conduct alleged in the complaint falls within the statutory language prohibiting sexual contact against a "physically helpless" victim. The alleged conduct also falls within the definition of sexual contact by means of a false representation of a bona fide medical purpose.

**Affirmed in part and reversed in part.**