**STATE of Minnesota, Respondent,**

v.

**Edward D. BLEVINS, Appellant.**

**No. A07–1397.**

Court of Appeals of Minnesota.

Nov. 25, 2008.

Lawrence Hammerling, Chief Appellate Public Defender, G. Tony Atwal, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by WORKE, Presiding Judge; KLAPHAKE, Judge; and PETERSON, Judge.

## O P I N I O N

PETERSON, Judge.

In this appeal from convictions of two counts of third-degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(d) (2002), appellant Edward Blevins argues that because the evidence does not prove that the complainant was unable to withhold consent or to withdraw consent, the evidence is insufficient to support the convictions. We reverse.

### FACTS

On October 12, 2003, T.W. went out with her friends in downtown Minneapolis. During the evening, T.W. consumed from ten to twelve alcoholic drinks and became intoxicated. At around 1:30 a.m., T.W. became separated from her friends. Appellant Edward Blevins approached T.W., and she asked him if he would help her find her car. Appellant led T.W. to believe that he was taking her to get help. They walked together for about twenty minutes, and T.W. became lost. Appellant took T.W. to the back-porch area of a house in a residential neighborhood and led her down stairs to a crawl space under the porch. T.W. testified that, at this time, she was "pretty drunk" and "had had a lot to drink."

While walking into the crawl space, appellant asked T.W. if he could kiss her and put his arm around her. T.W. testified about appellant's advances that she "was along with some of it but that's not what [she] wanted" and that she made sure that appellant knew that she just wanted help finding her car. Appellant eased T.W. onto her back and asked if he could perform oral sex on her. T.W. testified: "I told him I didn't want him to, and he just kept telling me it would be okay.... I asked him to please not and he said it will be fine...." T.W. testified that because she felt stuck, uncomfortable, and afraid, she "just let it happen" and "waited for it to be over." Appellant first performed oral sex on T.W. and then had sexual intercourse with her. During this time, T.W. did not scream or fight because she was afraid that appellant would harm her in other ways and because she was in an unfamiliar neighborhood.

After the assault, T.W. went to an emergency room where a nurse performed a sexual-assault exam that included taking a DNA sample. The sample went into a national database, and in August 2005, the Minneapolis Police Department received information that the sample matched appellant, who was living in another state at the time. Appellant was extradited to Minnesota, and, based on the two forms of penetration, he was charged with two counts of third-degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(d).

Following a jury trial, appellant was convicted as charged and sentenced to an executed 48–month term to be served consecutively to a sentence that he was already serving. This appeal followed.

### ISSUE

Was the evidence sufficient to prove that the complainant was "physically helpless" as required under Minn.Stat. § 609.344, subd. 1(d)?

## ANALYSIS

■ In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988).

■ "A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if ... the actor knows or has reason to know that the complainant is ... physically helpless[.]" Minn.Stat. § 609.344, subd. 1(d) (2002). " 'Physically helpless' means that a person is (a) asleep or not conscious, (b) unable to withhold consent or to withdraw consent because of a physical condition, or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor." Minn.Stat. § 609.341, subd. 9 (2002). " 'Consent' means words or overt actions by a person indicating a freely given present agreement to perform a particular sexual act with the actor." *Id.,* subd. 4(a) (2002).

The state does not claim that T.W. was asleep or not conscious during her encounter with appellant or that she was unable to communicate nonconsent to appellant's sexual acts. Instead, citing *State v. Grif-*

*fith,* 480 N.W.2d 347, 349–50 (Minn.App. 1992), *review denied* (Minn. Mar. 19, 1992), the state argues that the complainant was physically helpless because she was unable to withhold consent or to withdraw consent because of a physical condition.

In *Griffith,* the defendant was convicted of third-degree criminal sexual conduct for sexually assaulting the complainant while the complainant was intoxicated. *Id.* at 348. The complainant was awake and aware during the assault, but she did not verbally express her nonconsent. *Id.* at 349. The complainant testified at trial that she was unable to say anything and did not fight back because she did not know what to do. *Id.* at 350. On appeal, this court held that the evidence was sufficient to prove that the defendant was physically helpless because "[t]he jury was not required to infer that because the complainant was awake and aware of the penetrations she could have effectively withdrawn from the attack" and the jury could have inferred from the complainant's testimony that she felt helpless to stop the attack and that the complainant's helplessness was due to her physical condition. *Id.* at 349–50.

We agree with the state that the facts in this case are similar to the facts in *Griffith.* But following this court's decision in *Griffith,* the legislature amended the statutory definition of "physically helpless." At the time of the offense in *Griffith,* "physically helpless" was defined by statute to mean "unable to withhold consent or to withdraw because of a physical condition." Minn.Stat. § 609.341, subd. 9(b) (1990). In *Griffith,* this court interpreted "withdraw" as referring to the ability to withdraw from the attack. 480 N.W.2d at 349–50. In 1994, the legislature amended the statute by adding the word "consent" after "withdraw," which changed the definition of "physically helpless" to "unable to consent or to withdraw consent because of a

physical condition." 1994 Minn. Laws ch. 636, art. 2, § 31, at 2205.[1]

Under the amended statute, it is not sufficient for the state to prove that the complainant was unable to withdraw from the attack. The plain language of the statute now requires the state to prove that the complainant was unable to withhold or withdraw consent. Appellant argues that because the evidence shows that the complainant verbally withheld her consent during the assault, the evidence was insufficient to show that the complainant was unable to withhold consent or withdraw consent. Therefore, appellant contends, the evidence was insufficient to show that the complainant was "physically helpless" as required under Minn.Stat. § 609.344, subd. 1(d), and did not support the jury's verdict.

T.W. testified that when appellant began kissing her, "I was along with some of it but that's not what I wanted and I made sure that he knew that I was, you know, no, I just wanted [him] to help me find my car. . . ." She also testified that when appellant asked if he could perform oral sex on her, she "told him that [she] didn't want him to" and that she asked him to "please not." When asked during cross-examination if she was "conveying to this man that you didn't want this sexual activity to occur," T.W. answered, "Yes." Finally, T.W. acknowledged that she told a detective that "I just said [to appellant] please don't do this to me please don't, and [appellant] kept saying it will be fine."

Furthermore, T.W.'s testimony was corroborated at trial. An officer who spoke to T.W. testified, based on a police report, that "[t]he complainant told the suspect no, please don't touch me." The officer also testified that T.W. "stated that she was crying and telling him please don't do this." Another officer testified, based on his interview with T.W., "The male then took her pants off, she asked him not to do that, but he continued." Finally, T.W.'s best friend answered "yes" when asked if T.W. "told you she asked him to please don't do this but he did it anyway."

T.W.'s words to appellant expressed that she did not consent to the sexual encounter. Accordingly, because T.W. withheld her consent, the evidence is insufficient to demonstrate that she was unable to withhold or withdraw her consent. Therefore, the evidence was insufficient to prove that T.W. was "physically helpless" as defined by Minn.Stat. § 609.341, subd. 9(b) (2002).

## DECISION

Because the evidence shows that T.W. withheld consent to appellant's sexual act, the evidence is insufficient to prove that T.W. was "physically helpless" and, therefore, the evidence is insufficient to support appellant's convictions of third-degree criminal sexual conduct.

**Reversed.**

1. In *State v. Peng*, 524 N.W.2d 21, 23 (Minn. App.1994), this court concluded "that the statutory phrase 'unable . . . to withdraw' applies to a victim's inability to withdraw from the physical contact imposed upon her." This court also stated, "If the legislature had intended the term 'withdraw' to refer only to withdrawal of consent, it could have used the phrase 'withdraw consent.'" *Peng*, 524 N.W.2d at 23. When this court's opinion in *Peng* was released, the legislature had already amended Minn.Stat. § 609.341, subd. 9(b), by adding the word "consent," but the amendment did not apply to the offense in *Peng*, which was committed during August 1993. *See Peng*, 524 N.W.2d at 22 (stating sexual contact occurred in August 1993); 1994 Minn. Laws ch. 636, art. 2, § 70, at 2232 (stating that 1994 Minn. Laws ch. 636, art. 2, § 31, is effective August 1, 1994, and applies to crimes committed on or after that date).