*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0546**

State of Minnesota,
Respondent,

vs.

Juan Jasso, Jr.,
Appellant

**Filed October 27, 2014
Affirmed
Worke, Judge**

Kandiyohi County District Court
File No. 34-CR-11-920

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Shane D. Baker, Kandiyohi County Attorney, Willmar, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Worke, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges his conviction of third-degree criminal sexual conduct, arguing that the evidence was insufficient to show that the complainant was unable to

withhold consent, and that his counsel was ineffective for misadvising him on his maximum sentencing exposure. We affirm.

## FACTS

On October 28, 2011, A.R. went to her neighbor's house for a party where she consumed alcohol with the other guests, including appellant Juan Jasso, Jr. When A.R. left around 1:00 a.m., she described herself as stumbling, dizzy, and ready to just go to sleep. Between leaving the party and arriving home, Jasso asked A.R. "Can I hit that?" and she responded "No. No. No." and "Forget about it." Upon arriving home, A.R. vomited and then went to bed in her clothes, which still had vomit on them because she was too intoxicated to clean herself. A.R. next remembers waking up to Jasso pulling her across her bed by her ankle. When she attempted to crawl away, Jasso hit her tailbone, which made A.R. unable to move her legs. Jasso grabbed A.R.'s face and blew what A.R. believed to be crack-cocaine smoke into her mouth.

Jasso took his clothes off, grabbed A.R. by the back of her head, and forced his penis into her mouth. A.R. was not able to object to Jasso's actions because she could not catch her breath and was having a panic attack. A.R. got sick again and threw up. Jasso pulled off A.R.'s pants, and A.R. told Jasso "I don't want to do this. Please just leave me alone." Jasso put his penis inside of A.R.'s vagina. A.R. testified that she tried to grit her teeth and bear it because she could not move her legs, could not catch her breath, and was very intoxicated. Jasso does not dispute that he engaged in sexual contact with A.R., but claims the contact was consensual.

2

After a jury trial, Jasso was found guilty of third-degree criminal sexual conduct and was sentenced to 131 months in prison.

Jasso's trial counsel erroneously advised Jasso that he had only two criminal history points, which called for a guidelines sentence between 53 and 91 months. Trial counsel incorrectly believed that one of Jasso's previous convictions had decayed, and that he did not have a custody status point. In reality, Jasso had five criminal history points, which called for a guidelines sentence between 131 and 180 months.

Prior to trial, Jasso rejected a plea offer. After postconviction proceedings, in which Jasso and trial counsel testified and disputed the plea offers that were communicated, the district court found: (1) trial counsel had discussed Jasso's potential sentence and plea offers, including the prosecutor's recorded offer of fourth-degree criminal sexual conduct; and (2) trial counsel advised Jasso that he would receive a prison sentence ranging from 53 to 91 months, despite Jasso's claim he was informed his maximum sentence would be 48 months. The district court concluded that Jasso demonstrated his trial counsel's representation fell below an objective standard of reasonableness, but that Jasso did not show but for the ineffective assistance of counsel he would have accepted the plea offer.

This appeal follows.

## DECISION

### *Sufficiency of the evidence*

We review a claim of insufficient evidence to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jury

to reach their verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

A person is guilty of third-degree criminal sexual conduct when he engages in sexual penetration with another and "knows or has reason to know that the complainant is . . . mentally incapacitated[] or physically helpless." Minn. Stat. § 609.344, subd. 1(d) (2010). Sexual penetration includes sexual intercourse and fellatio. Minn. Stat. § 609.341, subd. 12(1) (2010). A person is mentally incapacitated when the "person[,] under the influence of alcohol, or a narcotic, . . . administered to that person without the person's agreement, lacks the judgment to give a reasoned consent to sexual contact or sexual penetration." *Id*., subd. 7 (2010). A person is physically helpless if she "is (a) asleep or not conscious, (b) unable to withhold consent or to withdraw consent because of a physical condition, or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor." *Id.*, subd. 9 (2010). Consent is present when "words or overt actions . . . indicat[e] a freely given present agreement to perform a particular sexual act with the actor. Consent does not mean . . . that the complainant failed to resist a particular sexual act." *Id.*, subd. 4(a) (2010). "A person

4

who is mentally incapacitated or physically helpless . . . cannot consent to a sexual act." *Id.*, subd. 4(b) (2010).

Two cases provide guidance in deciding this matter. In *State v. Blevins*, the complainant went out with friends and consumed several alcoholic drinks. 757 N.W.2d 698, 699 (Minn. App. 2008). The complainant became separated from her friends and Blevins approached her, led her under a house's crawl space, and asked if he could perform oral sex on her. *Id.* The complainant testified that she was "pretty drunk," and told Blevins she did not want oral sex. *Id.* Blevins performed oral sex on the complainant and then had sexual intercourse with her. *Id.* Blevins was convicted of third-degree criminal sexual conduct for sexual contact with a physically helpless victim. *Id.* This court reversed his conviction because the complainant verbally expressed to Blevins that she did not consent to the sexual encounter; therefore, "the evidence [was] insufficient to demonstrate that she was unable to withhold or withdraw her consent." *Id.* at 701.

In *State v. Berrios*, the complainant consumed several drinks, and became so intoxicated that she had memory gaps and described her state as "'falling down drunk.'" 788 N.W.2d 135, 137 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010). The complainant was placed in a bedroom by her coworkers, and the next thing she remembered was Berrios pulling down her pants. *Id.* The complainant said "no" and Berrios stopped, then she passed out. *Id.* The complainant "later woke up vomiting and discovered Berrios on top of her with his penis inside her vagina." *Id.* She kept passing out and was unable to move her body. *Id.* This court upheld Berrios's third-degree

5

criminal-sexual-conduct conviction, concluding that the jury had ample evidence to determine that Berrios knew or had reason to know that the complainant "had been rendered physically helpless by her alcohol consumption." *Id.* at 143. This court distinguished the facts in *Berrios* from *Blevins*: first, the complainant in *Berrios* kept losing consciousness throughout the attack while the complainant in *Blevins* was awake at all points; second, the complainant in *Berrios* needed assistance getting to her room while the complainant in *Blevins* was able to walk independently; and third, the complainant in *Berrios* was unconscious when penetrated while the complainant in *Blevins* was not physically unable to withhold consent even though she felt "ill, uncomfortable, and afraid." *Id.* at 142.

Here, A.R. was asleep and passed out from intoxication when Jasso came into her room. Like the complainant in *Berrios*, A.R. was so intoxicated that she had vomited on herself. A.R. testified that at one point she was not able to tell Jasso that she did not want his penis in her mouth because she was having a panic attack and a difficult time breathing. Therefore, even though A.R. verbally withheld consent during parts of the assault, at points she was unable to withhold consent because of her level of intoxication and because she was having a panic attack. Viewing the facts in a light most favorable to the verdict, we conclude that the evidence sufficiently supports the jury's verdict.

### Ineffective assistance of counsel

We review the denial of postconviction relief based on an ineffective assistance of counsel claim de novo because it is a mixed question of fact and law. *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013). A claim of ineffective assistance of counsel is

6

reviewed under the two-prong test set forth in *Strickland v. Washington*. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003) (citing 464 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). The appellant must show "(1) [that] his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Id.* (quotations omitted). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Ineffective assistance of counsel occurs in a plea-bargain situation if "there is a reasonable likelihood that the plea bargain would have been accepted had the defendant been properly advised." *Leake v. State*, 737 N.W.2d 531, 540 (Minn. 2007). When counsel is ineffective, prejudice can be shown when the "loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012). In evaluating prejudice, we review the totality of the evidence. *Rhodes*, 657 N.W.2d at 842. Finally, "the postconviction court is in a unique position to assess witness credibility," and is given considerable deference in this determination. *Opsahl v. State*, 710 N.W.2d 776, 782 (Minn. 2006).

Jasso claims his trial counsel did not accurately convey the state's offer. The district court found that Jasso's trial counsel discussed plea negotiations and the state's offer for the lesser offense of fourth-degree criminal sexual conduct with Jasso. Jasso

does not present convincing facts or arguments to show otherwise.[1] It is undisputed, however, that trial counsel miscalculated Jasso's criminal history score by multiple points, and we conclude that trial counsel's performance in this regard fell below an objective standard of reasonableness.

Jasso argues that had he known his actual maximum sentencing exposure there is a reasonable probability he would have accepted the state's offer. Jasso stated at sentencing that had he known the amount of time he was facing he thinks his decision would have been different. He stated at the postconviction proceeding that if he knew his correct criminal history score he would have accepted the state's offer.

However, trial counsel testified at the postconviction proceeding that Jasso did not indicate at any time that he wished to plead guilty and he did not request a pre-plea investigation. Further, Jasso maintained his innocence throughout the proceedings. Jasso argues this does not affect his likelihood of accepting a plea because his assertion of innocence was only in relation to the use of force—a charge on which he was acquitted— and that he does not deny engaging in sexual contact with A.R. These arguments are not compelling. Even at sentencing, Jasso stated that the victim was lying about his criminal conduct, and he did not specify that he thought her lies limited to the use of force.

Given trial counsel's testimony and Jasso's own statements, Jasso's claim that he would have accepted that state's offer is insufficient to meet his burden. Although there was a significant difference between Jasso's actual sentence and the "worst case

---

[1] We note that it is best practice to make a clear record of a defendant's unwillingness to take a certain plea to avoid instances, such as this one, in which there is disagreement about what was offered.

scenario" of which he was informed by trial counsel, we conclude that there is not a reasonable probability that a proper pretrial criminal history score and sentence guidelines calculation by trial counsel would have led Jasso to do anything other than take the case to trial.

**Affirmed.**