*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1610**

State of Minnesota,
Respondent,

vs.

Daniel Piper,
Appellant.

**Filed September 6, 2016
Affirmed in part, reversed in part, and remanded
Hooten, Judge**

Ramsey County District Court
File No. 62-CR-14-7312

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Peterson, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from his convictions of third and fourth-degree criminal sexual conduct,

appellant argues that (1) the evidence was insufficient to support the jury's finding that he

knew or had reason to know that the complainant was "physically helpless," and (2) his fourth-degree criminal sexual conduct conviction must be vacated because it is a lesser-included offense of third-degree criminal sexual conduct. We affirm in part, reverse in part, and remand to the district court with instructions that appellant's conviction of fourth-degree criminal sexual conduct be vacated as a lesser-included offense.

## FACTS

Appellant Daniel Piper was charged with one count of third-degree criminal sexual conduct and one count of fourth-degree criminal sexual conduct arising out of an incident that occurred on September 24, 2014. The state presented the following evidence at trial.

In September of 2014, V.T. lived in the finished basement of a house she owned and rented bedrooms on the main level of the house to three tenants. Piper was a friend of one of V.T.'s tenants and would occasionally visit V.T.'s house. V.T. met Piper in the summer of 2014 and briefly interacted with him on a few occasions. V.T. did not consider Piper to be a friend and did not know Piper's first name. V.T. had never invited Piper to come into her bedroom and, to her knowledge, he had never been in her bedroom prior to the incident at issue.

On September 23, 2014, V.T. went to bed around midnight. V.T. did not use alcohol or any other substances, other than her antidepressant, before going to bed. All of the lights were turned off in the basement, and the only light in V.T.'s bedroom came from her alarm clock and the headlights of passing cars.

Around 2:00 in the morning, V.T. was roused from her sleep by Piper ripping the covers off her bed, grabbing her feet or legs, and pulling her toward the end of the bed.

2

V.T. "wasn't really awake" and "was really out of it." Piper removed V.T's pajama pants, t-shirt, and underwear and then initiated oral sex on V.T. V.T. was confused and disoriented when Piper initiated oral sex on her because she had just been roused from sleep and it was very dark in her bedroom. Piper then penetrated V.T's vagina with his penis.

At first, V.T. thought Piper was her on-again, off-again boyfriend. V.T. "froze" when she eventually realized that he was not her boyfriend and recognized him as Piper when he called her by a nickname. Piper was the only person who called V.T. by that nickname, other than a few of V.T.'s coworkers. After hearing footsteps from upstairs, Piper jumped out of the bed and ran out of the room. V.T. reported the assault to the police the next day.

In a *Mirandized* interview with police following his arrest, Piper stated that when he went to V.T.'s bedroom, she was lying in the bed and that he was unsure of V.T.'s level of consciousness, but thought that she was probably "half [awake] and half [asleep.]" Piper indicated that he sat on the edge of V.T.'s bed and said "Hey Miss [V.T.]" and that V.T. "mumbled something to [him] maybe" in response. Piper indicated that he lay down beside V.T. and began hugging and kissing her. Piper stated that he put his hands under the covers and began fondling V.T. and determined that her "juices [were] flowing." Piper indicated that he then took V.T.'s pants off.

The jury found Piper guilty of both charged offenses, and the district court entered convictions on both counts. The district court sentenced Piper to 117 months in prison on

3

the third-degree criminal sexual conduct charge, but imposed no sentence on the fourth-degree criminal sexual conduct charge. This appeal followed.

## DECISION

### I.

Piper argues that the evidence was insufficient to support the jury's finding that he knew or had reason to know that V.T. was physically helpless because the evidence established that V.T. was "clearly conscious and capable of communicating" nonconsent during her encounter with Piper.

When reviewing the sufficiency of the evidence, we limit our review to

> a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did. We assume the jury believed the [s]tate's witnesses and disbelieved any evidence to the contrary. And we will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense.

*State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation and citations omitted).

A person is guilty of third-degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(d) (2014) if the person engages in sexual penetration with another person and "knows or has reason to know that the complainant is . . . physically helpless." Sexual penetration means "sexual intercourse, cunnilingus . . . [,] or . . . any intrusion however slight into the genital or anal openings . . . of the complainant's body by any part of the actor's body" if committed without the complainant's consent. Minn. Stat.

4

§ 609.341, subd. 12 (2014). A person is guilty of fourth-degree criminal sexual conduct under Minn. Stat. § 609.345, subd. 1(d) (2014) if the person engages in sexual contact with another person and "knows or has reason to know that the complainant is . . . physically helpless." Sexual contact means "the intentional touching by the actor of the complainant's intimate parts" if committed without the complainant's consent. Minn. Stat. § 609.341, subd. 11(a) (2014).

"'Physically helpless' means that a person is (a) asleep or not conscious, (b) unable to withhold consent or to withdraw consent because of a physical condition, or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor." *Id.*, subd. 9 (2014). "'Consent' means words or overt actions by a person indicating a freely given present agreement to perform a particular sexual act with the actor." *Id.*, subd. 4(a) (2014).

Two contrasting opinions issued by this court are helpful in determining whether V.T. was physically helpless. In *State v. Blevins*, the complainant had consumed 10 to 12 alcoholic drinks and was "pretty drunk" when she was assaulted. 757 N.W.2d 698, 699 (Minn. App. 2008). When Blevins offered to perform oral sex on her, the complainant told him multiple times that she did not want oral sex. *Id.* Despite the complainant's refusals, Blevins initiated oral sex on the complainant and had sexual intercourse with her. *Id.* During the assault, because the complainant "felt stuck, uncomfortable, and afraid, she 'just let it happen' and 'waited for it to be over.'" *Id.* Blevins was charged and convicted of two counts of third-degree criminal sexual conduct. *Id.* This court reversed his convictions, concluding that the evidence was insufficient to demonstrate that the

5

complainant was unable to withhold or withdraw her consent because she verbally expressed to Blevins that she did not consent to the sexual penetration. *Id.* at 701.

In *State v. Berrios*, the complainant consumed multiple alcoholic drinks in Berrios' presence and became so intoxicated that she had memory gaps, vomited, and passed out. 788 N.W.2d 135, 137 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010). The complainant was helped into a house and placed on a bed. *Id.* The next thing the complainant remembered was Berrios pulling down her pants. *Id.* The complainant told Berrios "no," and passed out. *Id.* The complainant later awoke to discover Berrios on top of her with his penis in her vagina. *Id.* During the assault, the complainant could not move her body and kept passing out. *Id.* Berrios was charged and convicted of third-degree criminal sexual conduct. On appeal, this court affirmed his conviction because the complainant was unconscious when Berrios sexually penetrated her and thus was physically helpless. *Id.* at 142.

This case falls somewhere between *Blevins* and *Berrios*. Like the complainant in *Blevins*, V.T. was aware of much of what was happening after being pulled to the edge of the bed, but her awareness is distinguishable from the awareness of the complainant in *Blevins*. V.T. was "really out of it" because she had just been roused from her sleep and was disoriented to the extent that she thought that the individual in her bed was her boyfriend. V.T. testified that much of the incident was a "blur" because she "wasn't really awake." When asked to describe her level of alertness at the time that Piper initiated oral sex, V.T. stated, "I was just woken up from sleep. I know for a fact I was asleep. I'm

6

almost sure that I was in REM sleep. I was woken up. I had no idea of what was exactly going on at the time."

Moreover, evidence in the record suggests that Piper sexually penetrated V.T. with his hand while she was asleep. In his interview with a police officer following his arrest, Piper stated that he put his hand under the covers and fondled her. Piper stated that V.T.'s "juices [were] flowing." V.T. never described Piper touching her with his hand in her vaginal area. "[A]ny intrusion however slight into the genital . . . opening[]" constitutes sexual penetration. Minn. Stat. § 609.341, subd. 12(2). Piper's statement that he fondled V.T. with his hand and determined that her "juices [were] flowing," combined with the fact that V.T. never described Piper touching her vaginal area with his hand, provides sufficient evidence for the jury to conclude that Piper sexually penetrated V.T. when she was asleep. We conclude that the evidence presented by the state was sufficient to allow the jury to conclude that V.T. was physically helpless at the time of sexual penetration.

To be convicted under Minn. Stat. § 609.344, subd. 1(d), however, the defendant must also know or have reason to know that the complainant is physically helpless. Here, there is some direct evidence of Piper's knowledge of V.T.'s condition. When Piper was asked in his interview with police whether V.T. was awake or asleep when he entered V.T.'s bedroom, Piper stated, "She was, I don't know, maybe she had probably been like half [awake] and half [asleep] maybe." Piper's equivocal statement indicating that he was unsure of V.T.'s level of consciousness, but thought she might have been half asleep at the time when he entered the bedroom, is insufficient to prove that he knew she was physically helpless a short period of time later, when he sexually penetrated her. Therefore, "we must

7

consider the state's circumstantial evidence, which requires that we engage in the type of heightened scrutiny that is appropriate for circumstantial evidence." *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013), *review denied* (Minn. June 16, 2015).

We apply a two-step test when evaluating the sufficiency of the circumstantial evidence supporting a defendant's conviction. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). Under the first step of the circumstantial evidence test, we identify the circumstances proved. *Id.* "[I]n determining the circumstances proved, [appellate courts] consider only those circumstances that are consistent with the verdict. This is because the jury is in the best position to evaluate the credibility of the evidence even in cases based on circumstantial evidence." *Id.* at 599 (citation omitted). "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted).

The evidence at trial establishes that V.T. had never invited Piper to her bedroom before the incident at issue and that he had never been in her bedroom before. V.T. did not consider Piper to be a friend and had never talked with him about having a sexual relationship. In the early morning hours of September 24, 2014, Piper entered V.T.'s bedroom. V.T. did not see Piper enter her bedroom and had not invited him into her bedroom that night. When Piper lay down on V.T.'s bed and began hugging and kissing her, V.T. remained silent. Piper reached his hand under the covers and determined that V.T.'s "juices [were] flowing." V.T. was roused from her sleep by Piper ripping the covers off, pulling her to the edge of the bed, and taking off her clothes. V.T. was disoriented and

confused as Piper removed her clothes and initiated oral sex on her because she had just been roused from sleep.

Viewing the evidence in the light most favorable to the verdict, these circumstances are consistent with guilt. Piper knew or had reason to know that V.T. was asleep when he determined that her "juices [were] flowing" by penetrating her genital opening with his hand because V.T. said nothing when Piper entered her bedroom in the middle of the night, hugged her, kissed her, and fondled her. Moreover, V.T. did not say anything when she was roused from sleep by Piper pulling her to the edge of the bed, taking her clothes off, and initiating oral sex. These circumstances are consistent with guilt because Piper knew or had reason to know that V.T. was unable to communicate nonconsent at the time when Piper sexually penetrated her by penetrating her genital opening and by initiating oral sex.

Here, the circumstances proved are inconsistent with any rational hypothesis other than guilt. The theory that Piper did not know or should not have known V.T. was asleep or unable to communicate her nonconsent at the time of sexual penetration is inconsistent with the circumstances proved in this case. We conclude that there was sufficient evidence to sustain Piper's convictions.

## II.

Piper argues that his conviction for fourth-degree criminal sexual conduct must be vacated because it is a lesser-included offense of third-degree criminal sexual conduct. The

9

state agrees that Piper's fourth-degree criminal sexual conduct conviction should be vacated.

The jury found Piper guilty of both third and fourth-degree criminal sexual conduct, and the district court entered judgments of conviction on both counts. Minnesota law provides that an accused "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2014). An included offense includes "[a] lesser degree of the same crime." *Id.*, subd. 1(1).

Piper correctly argues, and the state concedes, that fourth-degree criminal sexual conduct is a lesser-included crime of third-degree criminal sexual conduct. Piper's two convictions were based on the same conduct committed against the same victim, and therefore constitute the same crime in differing degrees. Therefore, we reverse the fourth-degree criminal sexual conduct conviction and remand to the district court with instructions to vacate that conviction. *See State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984).

**Affirmed in part, reversed in part, and remanded.**