**STATE of Minnesota, Respondent,**

v.

**Elvis Joko PORTE, Appellant.**

**No. A12–1372.**

Court of Appeals of Minnesota.

June 24, 2013.

Lori Swanson, Attorney General, St. Paul, MN; and Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Senior Assistant County Attorney, Rochester, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by KIRK, Presiding Judge; JOHNSON, Chief Judge; and STONEBURNER, Judge.

## OPINION

JOHNSON, Chief Judge.

A Rochester police officer found crack cocaine inside a van that Elvis Joko Porte was driving. An Olmsted County jury found Porte guilty of, among other things, first-degree and second-degree controlled-substance offenses. On appeal, Porte raises several issues. We conclude that the evidence is sufficient to support his controlled-substance convictions. But we conclude that the district court erred by giving a permissive-inference instruction to the jury. Therefore, we reverse and remand for a new trial.

## FACTS

On February 24, 2011, a woman reported that her van, which she had lent to her boyfriend, A.R., was missing. That evening, Rochester police officer Kenneth Gallion observed Porte driving the van. Officer Gallion stopped the van and removed Porte from the vehicle.

Inside the van, officers found crack cocaine and marijuana. Officer Mitchell Jenson found a plastic bag of crack cocaine on the floor near the left side of the front passenger's seat. Officer Jenson also found a bag of marijuana and a bag containing 50 individually wrapped packages of crack cocaine inside a small storage compartment below the dash in front of the center console. (The parties describe this space as a "glove compartment," although it is not on the passenger's side like most glove compartments. For the sake of clarity, we will refer to this space as a "center glove compartment.") Porte initially told the officers that he had permission to use the van. After officers informed Porte that drugs were found inside the van, Porte claimed that the van was stolen.

The state charged Porte with seven offenses: first-degree controlled substance crime for possession with intent to sell more than 10 grams of cocaine, in violation of Minn.Stat. § 152.021, subd. 1(1) (2010);

second-degree controlled substance crime for possession of more than 6 grams of cocaine, in violation of Minn.Stat. § 152.022, subd. 2(1) (2010); fifth-degree controlled substance crime for possession of marijuana, in violation of Minn.Stat. § 152.025, subd. 2(a)(1) (2010); aiding and abetting each of the first-degree and second-degree controlled-substance offenses, in violation of Minn.Stat. §§ 152.021, subd. 1(1), 152.022, subd. 2(1), 609.05, subd. 1 (2010); and two driving violations.

During a two-day trial in February 2012, A.R. testified that he let Porte use the van in exchange for $40 worth of crack cocaine and that he later agreed to convey the van to Porte in exchange for money and crack cocaine. A.R. testified that, at the time of their agreement, he opened up the center glove compartment to show Porte insurance papers and did not see any drugs inside. Porte's front-seat passenger, R.M., testified for the prosecution that the cocaine on the floor near the passenger's seat was his but that the drugs in the center glove compartment did not belong to him.

Porte testified in his own defense. He denied that the van transaction involved an exchange of drugs, but he admitted to using drugs in the van before acquiring it. Porte testified that he gave A.R. $500 as partial payment for the van and agreed to give A.R. an additional $200 at a later date. Porte further testified that none of the drugs in the vehicle belonged to him and that he had never opened the center glove compartment or looked inside it.

Before the case was submitted to the jury, the state dismissed the charge of marijuana possession. The jury found Porte guilty on all remaining counts. In May 2012, the district court imposed a presumptive sentence of 98 months of imprisonment. Porte appeals.

## ISSUES

I.   Is the evidence sufficient to support Porte's convictions of first-degree controlled substance crime and second-degree controlled substance crime?

II.   Is Porte entitled to a new trial because the district court gave the jury a permissive-inference instruction?

## ANALYSIS

### I.

Porte first argues that the evidence is insufficient to support the convictions on the first-degree and second-degree controlled-substance offenses. Specifically, he argues that the state failed to prove both that he possessed the crack cocaine that was found in the center glove compartment and that he intended to sell it. We address his sufficiency-of-the-evidence argument first because it would, if successful, provide Porte with the greatest possible relief, outright reversal.

When considering a claim of insufficient evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction," is sufficient to allow the jurors to reach a verdict of guilty. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn.2012) (quotation omitted). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Caldwell*, 803 N.W.2d 373, 384 (Minn.2011) (quotation omitted). "[W]e will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Ortega*, 813 N.W.2d at 100.

## A.

Porte argues that the state did not introduce evidence sufficient to prove that he possessed the crack cocaine that was found inside the center glove compartment. He asserts that he "was only one in a series of persons who had recently had control of the van." He contends that because he was in the process of buying the van, he never opened the center glove compartment and, thus, did not know that drugs were inside. The state must prove that Porte possessed crack cocaine to obtain convictions of first-degree and second-degree controlled-substance offenses. *See* Minn.Stat. §§ 152.01, subd. 15a(3) (2010), 152.021, subd. 1(1), 152.022, subd. 2(1).

A defendant may be deemed to have possessed controlled substances by constructive possession. *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975). A jury may find that a defendant was in constructive possession of a controlled substance if the state proves:

(a) that the police found the substance in a place under defendant's exclusive control to which other people did not normally have access, or (b) that, if police found it in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it.

*Id.* at 105, 226 N.W.2d at 611; *see also State v. Lee*, 683 N.W.2d 309, 316–17 n. 7 (Minn.2004). "Proximity is an important factor in establishing constructive possession." *State v. Breaux*, 620 N.W.2d 326, 334 (Minn.App.2001). Furthermore, an item that is constructively possessed may be possessed by more than one person. *State v. Smith*, 619 N.W.2d 766, 770 (Minn. App.2000), *review denied* (Minn. Jan. 16, 2011). Thus, jurors could find Porte guilty of the controlled-substance offenses if they believed either that Porte possessed the crack cocaine alone or that he possessed the crack cocaine jointly with R.M., the front-seat passenger at the time of Porte's arrest. *See id.*

The trial record contains sufficient evidence to allow the jury to find that Porte had constructive possession of the crack cocaine that was found in the center glove compartment. A.R. testified that he allowed Porte to use the van in exchange for crack cocaine and later agreed that Porte could acquire the van with money and crack cocaine. Porte also admitted to using marijuana in the van before agreeing to acquire it, and the marijuana was found next to the crack cocaine. In addition, all other persons known to have had access to the van denied placing the crack cocaine and marijuana inside the center glove compartment. A.R. testified that no drugs were inside the center glove compartment when he delivered the van to Porte. The above-described evidence is sufficient to allow a jury to believe that Porte constructively possessed the crack cocaine that was found in the van's center glove compartment. *See State v. Cusick*, 387 N.W.2d 179, 180–81 (Minn.1986) (cocaine found on ground near defendant's wallet after car accident); *State v. Maldonado*, 322 N.W.2d 349, 353 (Minn.1982) (marijuana found under driver's seat of truck driven by defendant with passengers); *Florine*, 303 Minn. at 103–04, 226 N.W.2d at 610 (cocaine found in abandoned vehicle near defendant's billfold and driver's license).

Porte asserts that it is more likely that the crack cocaine belonged to A.R. or R.M., given their admissions to using drugs and R.M.'s proximity to the center glove compartment while Porte was driving. Porte also describes A.R.'s and R.M.'s testimony as "self-serving" and asks us to consider that A.R. was granted immunity. These arguments essentially ask this court to reweigh the evidence.

We must defer to the jury's assessment of a witness's credibility, *State v. Green,* 719 N.W.2d 664, 673–74 (Minn.2006), and we must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary," *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

In sum, the evidence is sufficient to prove that Porte had constructive possession of the crack cocaine that was found inside the van's center glove compartment.

### B.

Porte argues that the state did not introduce evidence sufficient to prove that he intended to sell the crack cocaine that was found in the van's center glove compartment. The state must prove that Porte intended to sell crack cocaine to obtain a conviction of first-degree controlled substance crime. *See* Minn. Stat. §§ 152.01, subd. 15a(3), 152.021, subd. 1(1). The word "sell," for these purposes, is defined to also mean "give away, barter, deliver, exchange, distribute or dispose of to another." Minn.Stat. § 152.01, subd. 15a(1) (2010).

Intent to sell or distribute controlled substances typically is proved with circumstantial evidence. *State v. White,* 332 N.W.2d 910, 912 (Minn.1983). Circumstantial evidence of an intent to sell controlled substances may " 'include[ ] evidence as to the large quantity of drugs possessed, evidence as to the manner of packaging, and other evidence.' " *State v. Hanson,* 800 N.W.2d 618, 623 (Minn.2011) (quoting *White,* 332 N.W.2d at 912). A conviction based on circumstantial evidence receives "heightened scrutiny" on appellate review. *State v. Al–Naseer,* 788 N.W.2d 469, 473 (Minn.2010).

Porte contends that we should apply heightened scrutiny when analyzing the sufficiency of the evidence of intent to sell. Whether we apply the standard of review applicable to circumstantial evidence depends on whether the conviction necessarily depends on circumstantial evidence. Generally, if the state's evidence on an element of an offense (or more than one element) consists solely of circumstantial evidence, the supreme court applies the circumstantial-evidence standard of review. *See, e.g., Al–Naseer,* 788 N.W.2d at 473–75; *State v. Leake,* 699 N.W.2d 312, 319–20 (Minn.2005); *State v. Rhodes,* 657 N.W.2d 823, 840 (Minn.2003). But if the state introduced direct evidence on each element of an offense, the supreme court does not apply the circumstantial-evidence standard of review. *See State v. Flowers,* 788 N.W.2d 120, 133 n. 2 (Minn.2010). This case is unlike *Flowers* and is analogous to *Al–Naseer, Leake,* and *Rhodes* because Porte's conviction necessarily depends on circumstantial evidence on the element at issue here, whether Porte intended to sell the crack cocaine that was in his possession.

Although the state introduced some direct evidence that Porte had agreed to give crack cocaine to A.R. in exchange for the van, the state did not prove the amount of crack cocaine that Porte intended to give to A.R. To obtain a conviction of first-degree controlled substance crime pursuant to section 152.021, subdivision 1(1), the state must prove that Porte sold or intended to sell 10 or more grams of crack cocaine. The state sought to do so by proving that Porte intended to sell the crack cocaine found in the center glove compartment, which weighed 21.5 grams. Because the state's direct evidence is insufficient by itself to prove Porte's intent to sell 10 or more grams of crack cocaine, we must consider the state's circumstantial evidence, which requires that we engage in the type of heightened scrutiny that is appropriate for circumstantial evidence.

*See State v. Silvernail*, 831 N.W.2d 594, 602–06 (Minn.2013) (Stras, J., concurring).

We apply a two-step test to evaluate the sufficiency of the circumstantial evidence supporting a defendant's conviction. *State v. Andersen*, 784 N.W.2d 320, 329–30 (Minn.2010). First, we "identify the circumstances proved." *Id.* at 329 (quotation omitted). At this first step, "we defer . . . to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Id.* (quotation omitted). Second, we "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved," including "inferences consistent with a hypothesis other than guilt." *Id.* (quotation omitted). At this second step, "we give no deference to the fact finder's choice between reasonable inferences." *Id.* at 329–30 (quotation omitted). Circumstantial evidence supporting a conviction must be "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 330. "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Al–Naseer*, 788 N.W.2d at 473 (quotation omitted). Nonetheless, "we have recognized that the jury is in the best position to evaluate the evidence, and we will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture." *State v. Stein*, 776 N.W.2d 709, 714 (Minn.2010) (alteration and quotation omitted).

In this case, the circumstantial evidence is sufficient to prove that Porte possessed crack cocaine with intent to sell it. First, the circumstances proved are that Porte actually distributed crack cocaine when he provided $40 worth of crack cocaine to A.R. in exchange for use of the van and that he later agreed to acquire the van in exchange for money and an unknown quantity of crack cocaine. In addition, the circumstantial evidence shows that Porte possessed 50 individually wrapped packages of crack cocaine. Second, the only reasonable inference is that Porte possessed the crack cocaine in order to sell it. Porte distributed crack cocaine in the recent past and had agreed to do so again. Officer Brian Roussell testified that, in his opinion, Porte's possession of 50 individually wrapped packages of crack cocaine indicates that crack cocaine was for sale. Likewise, Detective Tracy Nepper testified that, in her opinion, a person in possession of 50 individually wrapped packages intends to sell them. Detective Nepper has investigated narcotics crimes for seven years and frequently has arrested users possessing very small amounts of drugs, but never has arrested a mere user possessing 50 individually wrapped packages. The evidence as a whole is "consistent with guilt and inconsistent with any rational hypothesis except that of guilt," *Andersen*, 784 N.W.2d at 330 (quotation omitted), and "form[s] a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt," *Al–Naseer*, 788 N.W.2d at 473 (quotation omitted).

Thus, the evidence is sufficient to support Porte's convictions of first-degree and second-degree controlled-substance offenses.

## II.

Porte next argues that the district court erred by giving the jury a permissive-inference instruction.

## A.

A district court must instruct the jury in a way that "fairly and adequately explain[s] the law of the case" and does not "materially misstate[ ] the applicable law." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn.2011). A district court, however, has "considerable latitude" in selecting language for jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn.2011) (quotation omitted). Accordingly, we apply an abuse-of-discretion standard of review to a district court's jury instructions. *Koppi*, 798 N.W.2d at 361.

In this case, the district court instructed the jury as follows:

> In determining whether or not it has been proven beyond a reasonable doubt that defendant was in knowing possession of cocaine, you should consider all of the evidence presented. The law allows, but does not require, you to find knowing possession from proof beyond a reasonable doubt that defendant was the driver or in physical control of a passenger automobile and cocaine was present in the automobile.

> If you find so beyond a reasonable doubt, you may, but are not required to, find that the defendant knowingly possessed cocaine.

Porte argues that this instruction "violated the supreme court's express disapproval of permissive-inference instructions." He relies on three supreme court opinions: *State v. Litzau*, 650 N.W.2d 177 (Minn.2002), *State v. Olson*, 482 N.W.2d 212 (Minn.1992), and *State v. LaBatte*, 482 N.W.2d 217 (Minn.1992). In the most recent of those three cases, the district court gave the jury the following instruction:

> In determining whether or not it has been proven beyond a reasonable doubt that the defendant was in knowing possession of methamphetamine, you should consider all the evidence presented.

The law allows, but does not require, you to find knowing possession from proof beyond a reasonable doubt that the defendant was the driver or in control of a passenger automobile and the methamphetamine was present in the automobile. If you so find beyond a reasonable doubt, you may, but are not required to, find that the defendant knowingly possessed methamphetamine.

*Litzau*, 650 N.W.2d at 186 n. 8. The supreme court began its analysis in *Litzau* by stating that permissive-inference jury instructions are disfavored: "[A]s a general rule, jury instructions advising that a particular fact may be inferred from other particular facts, if proved, should be avoided." *Id.* at 185–86. The supreme court elaborated by stating:

> Such instructions " 'are undesirable in that they tend to inject argument into the judge's charge and lengthen it unnecessarily.' " [*Olson*, 482 N.W.2d at 215] (quoting *Manual of Model Criminal Jury Instructions for the Ninth Circuit*, 48 (1989 ed.)). Such instructions also improperly influence the jury not only by isolating particular facts but also by giving a particular step of logic "the official legal imprimatur of the state." Charles Collier, *The Improper Use of Presumptions in Recent Criminal Law Adjudication*, 38 Stan. L. Rev. 423, 456 (1986).

*Id.* at 186. The supreme court explained that the instruction in that particular case was erroneous for two reasons:

> The instruction amounted to an intrusion on the jury's deliberative process because it effectively told the jury in this case that the judge thought there was sufficient evidence for a conviction. It was undisputed that appellant was the driver and that methamphetamine was concealed in the body of the vehicle.

The only real issue was whether appellant knew that the vehicle contained methamphetamine. The instruction also focused the jury on some facts, rather than all the facts. "Permissive inferences ... permit juries to avoid assessing the myriad facts which make specific cases unique." Charles R. Nesson, *Reasonable Doubt and Permissive Inferences: The Value of Complexity*, 92 Harv. L. Rev. 1187, 1192 (1979). *Id.* at 186–87. The supreme court concluded that the instruction constituted plain error. *Id.* at 187.

In this case, the permissive-inference instruction that the district court gave to the jury is practically identical to the instruction in *Litzau*. Furthermore, the circumstances of this case are not materially different from the circumstances in *Litzau*. There was no dispute that Porte was driving the vehicle in which crack cocaine was found. Porte sought to persuade the jury that he did not know that the van contained crack cocaine. But the instruction, like the instruction in *Litzau*, focused on only some of the evidence and suggested that the district court believed that the evidence showed that Porte was aware of the crack cocaine. Thus, we conclude that the district court erred by giving the instruction.[1]

### B.

▮▮▮▮ The rules of criminal procedure provide, "Any error that does not affect substantial rights must be disregarded." Minn. R.Crim. P. 31.01. This rule is known as the harmless-error rule. *State v. Bouwman*, 354 N.W.2d 1, 8 n. 7 (Minn.1984). The harmless-error rule may be invoked in cases in which a district court erroneously instructed the jury. *Gatson*, 801 N.W.2d at 147–48; *Koppi*, 798 N.W.2d at 364–66. An erroneous jury instruction is harmless if, "beyond a reasonable doubt," the erroneous instruction "had no significant impact on the verdict." *Koppi*, 798 N.W.2d at 364 (quotation omitted).

In this case, the state did not assert a harmless-error argument. The state did not argue in the alternative that, even if the instruction was erroneous, this court should affirm on the ground that the erroneous instruction did not affect Porte's substantial rights because the erroneous instruction did not have a significant impact on the verdict. Rather, in response to Porte's challenge to the permissive-inference instruction, the state's only argument is that the instruction was not erroneous.

▮▮▮▮ Because the state did not assert a harmless-error argument, the question arises whether this court may conduct a harmless-error analysis on its own initiative. This specific question has not been answered by the supreme court or by this court. As a general rule, issues that are not raised by an appellant on appeal "are deemed waived unless prejudicial errors

---

1. The district court prepared its instruction by following two unpublished opinions in which this court distinguished permissive-inference instructions from the instructions given in *Olson* and *LaBatte*. *See State v. Otterson*, No. C1–00–1419, 2001 WL 410282 at *2 (Minn. App. Apr. 24, 2001); *State v. Acosta*, No. C3–99–1785, 2000 WL 1146120 at *3 (Minn.App. Aug. 15, 2000). The unpublished opinions of this court are, of course, not precedential. Minn.Stat. § 480A.08, subd. 3(c) (2012); *Vla-*

*hos v. R & I Constr., Inc.*, 676 N.W.2d 672, 676 n. 3 (Minn.2004). The problem in this case, however, is not merely that *Acosta* and *Otterson* are unpublished; the problem is that they were issued before the supreme court's opinion in *Litzau* and are inconsistent with *Litzau*. *See* 650 N.W.2d at 186–87. If an opinion of this court (published or unpublished) is inconsistent with a subsequent supreme court opinion, the supreme court opinion naturally must govern.

are obvious from the record." *Barnes v. State,* 768 N.W.2d 359, 363 n. 2 (Minn. 2009). Given this general rule, we may assume that in a direct appeal, the state's failure to assert a harmless-error argument in its responsive brief is a waiver of the harmlessness issue, unless it is "obvious" that the district court's error was harmless. *See id.*

The federal circuit courts have considered this issue in depth and appear to be relatively consistent in their approach. The prevailing view is reflected in an opinion of the United States Court of Appeals for the Eighth Circuit, which has stated, as a matter of federal procedural law, that the government's failure to assert harmless error constitutes a "waiver" such that an appellate court is "not obliged to reach the issue in [its] analysis" but "has discretion to overlook the waiver in certain circumstances." *United States v. Ghane,* 673 F.3d 771, 787 (8th Cir.2012).

The leading case is *United States v. Giovannetti,* 928 F.2d 225 (7th Cir.1991) (per curiam), in which the United States Court of Appeals for the Seventh Circuit reasoned that the government waives its right to harmless-error review by not making a harmless-error argument but that the waiver does not necessarily preclude the court from conducting a harmless-error analysis. *Id.* at 226. The *Giovannetti* court summarized its approach as follows:

> we have discretion to overlook a failure to argue harmlessness, and in deciding whether to exercise that discretion the controlling considerations are [1] the length and complexity of the record, [2] whether the harmlessness of the error or errors found is certain or debatable, and [3] whether a reversal will result in protracted, costly, and ultimately futile proceedings in the district court.

*Id.* at 227. The *Giovannetti* approach appears to recognize both the justifications of the waiver doctrine and the justifications for limited exceptions. The *Giovannetti* approach reflects the principle that *sua sponte* review is disfavored because it may be unfair to a defendant-appellant, who would be deprived of a fair opportunity to respond to the prosecution's argument that an error is harmless, and because it imposes greater burdens on an appellate court, which would need to identify and become familiar with the relevant parts of the trial record without the benefit of briefing from the parties. *See United States v. Gonzalez–Flores,* 418 F.3d 1093, 1100–01 (9th Cir.2005). But the *Giovannetti* court also noted that *sua sponte* review of harmlessness may be justified "for the sake of protecting third-party interests including such systemic interests as the avoidance of unnecessary court delay." 928 F.2d at 226. Other federal circuit courts have cited *Giovannetti* with approval and have applied its three-factor test or a similar test. *See, e.g., United States v. Holness,* 706 F.3d 579, 592 (4th Cir.2013); *Gonzalez–Flores,* 418 F.3d at 1100–01; *United States v. Torrez–Ortega,* 184 F.3d 1128, 1136 (10th Cir.1999); *United States v. Rose,* 104 F.3d 1408, 1414–15 (1st Cir. 1997); *United States v. McLaughlin,* 126 F.3d 130, 135 (3d Cir.1997); *United States v. Adams,* 1 F.3d 1566, 1575–76 (11th Cir. 1993); *United States v. Pryce,* 938 F.2d 1343, 1347–48 (D.C.Cir.1991).

In this case, it is not obvious that the district court's erroneous jury instruction is harmless. *See Barnes,* 768 N.W.2d at 363 n. 2. Furthermore, our application of the *Giovannetti* factors does not persuade us to make an exception to the general rule of waiver. First, the complexity of the factual record in this case is increased by the stark differences between the evidence presented by the state and the defense. The conflicting testimony of the parties' respective witnesses means that

the jury's verdict may have depended on credibility determinations. Second, the answer to the harmlessness question is debatable, not certain. Based on our review of the record for purposes of the other issues raised by Porte, we cannot easily predict the likely result of a full and proper harmless-error analysis. Third, we are unable to say that reversal is likely to cause protracted, costly, and futile proceedings on remand. Accordingly, we decline to review *sua sponte* whether the district court's error in giving the jury a permissive-inference instruction is harmless error. Thus, we reverse and remand for a new trial.

## DECISION

The evidence is sufficient to support Porte's convictions of first-degree controlled substance crime and second-degree controlled substance crime. But Porte is entitled to a new trial because the district court committed reversible error by giving the jury a permissive-inference instruction.

Porte asserts additional reasons why he is entitled to a new trial, both through counsel and in a *pro se* supplemental brief. We need not consider those additional issues because we already have concluded that Porte is entitled to a new trial.

**Reversed and remanded.**