*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0130**

State of Minnesota,
Respondent,

vs.

Ronald Wayne Elias Thompson,
Appellant.

**Filed November 23, 2015
Affirmed
Stauber, Judge**

Becker County District Court
File No. 03-CR-14-1084

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Gretchen D. Thilmony, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Kirk, Judge; and Smith, Judge.

# UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from his conviction of failing to register a secondary address, appellant argues that the evidence was insufficient to support his conviction. We affirm.

## FACTS

Beginning in 2008, appellant Ronald Thompson was required to register as a predatory offender. Several years later, in May 2014, appellant was charged with one count of violation of the predatory offender registration requirements under Minn. Stat. § 243.166, subd. 5(a) (2012), for failing to provide notice of a change in his primary address from January 21, 2014, through April 24, 2014. The state later added a second count of violation of the predatory offender registration requirements under Minn. Stat. § 243.166, subd. 5(a), for failing to register a secondary address.

At trial, evidence was presented establishing that in April 2013, appellant informed the Bureau of Criminal Apprehension (BCA) that he would be residing at his father's house in White Earth beginning June 1, 2013. The change of information form listed his father's house as the primary address and did not list a secondary address.

On January 21, 2014, White Earth Police Officer Neal Warren performed a compliance check on appellant at his father's home in White Earth. Officer Warren arrived at the residence at 11:13 a.m., but appellant was not present. Instead, Officer Warren spoke with appellant's father, Ronald Thompson, Sr. (Thompson), who stated that appellant had been in Naytahwaush for the past week staying with an aunt but that he "was supposed to be home any day."

Officer Warren returned to appellant's father's home for another compliance check on April 23, 2014. Officer Warren knocked on the door at about 7:15 p.m., but no one answered. Officer Warren then returned to that address the next day at about 7:20 p.m. and spoke with Thompson. Officer Warren testified that Thompson told him that

appellant "was staying out at his aunt['s] . . . residence in Naytahwaush." Officer Warren also testified that Thompson gave no indication that appellant "had been home between" January and April of 2014.

Thompson testified that appellant had been living at his house "for about three years," that appellant stayed at the house "most of the time," but that appellant would sometimes stay overnight at his girlfriend's house. Thompson also admitted that on January 21, 2014, he told Officer Warren that appellant stayed at his house "off and on."

Appellant testified that he began living with his father in White Earth in 2012. According to appellant, his girlfriend lives across the street but he never stays overnight at her house because he is a convicted felon and his girlfriend is under a contract that prohibits felons from residing in her housing complex. Appellant also claimed that the only time he stayed overnight at someplace other than his father's house between January 2014 and April 2014, was the "two and a half nights" he stayed with his aunt in Naytahwaush in January 2014.

A jury found appellant guilty of the charged offenses. The district court entered a conviction on count two of the complaint, failing to register a secondary address, but did not adjudicate appellant guilty of count one. The district court then granted appellant's request for a dispositional departure, stayed execution of appellant's presumptive 24-month sentence, and placed appellant on probation. This appeal followed.

**D E C I S I O N**

Appellant challenges the sufficiency of the evidence supporting the jury's verdict with respect to both counts in the complaint. When reviewing a claim of insufficient

3

evidence to support a conviction, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support a conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). In undertaking this analysis, we assume that the jury disbelieved any testimony conflicting with that conviction. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). We "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Ortega*, 813 N.W.2d at 100.

A person who is required to register under the statute must register with the corrections agent or law-enforcement authority the person's primary address and "all of the person's secondary addresses in Minnesota." Minn. Stat. § 243.166, subd. 4(a)(1)-(2) (2012). Primary address is defined as "the mailing address of the person's dwelling." *Id.*, subd. 1a(g) (2012). A secondary address is "where the person regularly or occasionally stays overnight when not staying at the person's primary address." *Id.*, subd. 1a(i) (2012).

Appellant argues that there is insufficient evidence to support his conviction of failing to register a secondary address. In making this argument, appellant claims that the circumstantial-evidence standard of review applies because "the state's case was based entirely on circumstantial evidence." The state disagrees, arguing that there is direct evidence of appellant's guilt and, therefore, the traditional standard of review for sufficiency-of-the-evidence challenges is applicable.

4

To determine whether to apply the traditional standard of review or the circumstantial-evidence standard of review, we ask whether the state's direct evidence is sufficient to prove each element of the crime. *See, e.g., State v. Flowers*, 788 N.W.2d 120, 133 n.2 (Minn. 2010). If the state's direct evidence, by itself, is sufficient to prove each element of the charged offense, we apply the traditional standard of review; but if the state's direct evidence, by itself, is insufficient to prove each element of the charged offense, and the state also relies on circumstantial evidence to prove one or more elements, the circumstantial-evidence standard of review is applicable. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013) (applying circumstantial-evidence standard of review because state introduced insufficient direct evidence of possession of requisite amount of controlled substance); *see also State v. Salyers*, 858 N.W.2d 156, 161 (Minn. 2015) (applying traditional standard of review because state introduced sufficient direct evidence of possession of firearm). Direct evidence is "'evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption,'" while circumstantial evidence is "'evidence based on inference and not on personal knowledge or observation.'" *Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (alterations omitted) (quoting *Black's Law Dictionary* 595–96 (8th ed. 2004)).

To prove that appellant failed to register as a predatory offender, the state had to establish the following four elements: (1) that appellant is a person required to register as a predatory offender; (2) that appellant knowingly violated any registration requirement; (3) that "the time period during which [appellant] is required to register has not elapsed";

5

and (4) that his failure to register occurred on the date and in the county alleged. 10 *Minnesota Practice*, CRIMJIG 12.102 (2006). One of the registration requirements is that appellant "provide to the corrections agent . . . all of [his] secondary addresses in Minnesota." Minn. Stat. § 243.166, subd. 4a(a)(2).

The only element contested by appellant is that he knowingly violated a registration requirement. And more specifically, appellant argues that the state failed to present any direct evidence that he had a secondary address. We disagree. A secondary address is a place "where the person . . . *occasionally stays overnight* when not staying at the person's primary address." Minn. Stat. § 243.166, subd. 1a(i) (emphasis added). Here, Thompson testified that appellant stayed at his girlfriend's house "overnight" "once [or] twice a week." This testimony is direct evidence that appellant had a secondary address. *See Bernhardt*, 684 N.W.2d at 477 n.11. We therefore apply the traditional standard of review.

Appellant argues that the "testimony and evidence presented by the state regarding a secondary address was insufficient to prove beyond a reasonable doubt that there was indeed a place where [he] "'regularly or occasionally stayed overnight.'" But as stated previously, Thompson testified that appellant stayed at his girlfriend's house "overnight" "once [or] twice a week." If believed, this testimony establishes that appellant had a secondary address. Although appellant testified that he never stayed overnight at his girlfriend's house, the jury by its verdict disbelieved appellant's testimony and found Thompson's testimony to be credible. It is well settled that the jury is the ultimate judge of credibility, and we defer to that determination. *See State v. Mems*, 708 N.W.2d 526,

531 (Minn. 2006). Moreover, Officer Warren testified that when he performed the compliance check on appellant on January 21, 2014, Thompson told him that appellant had been staying at his aunt's house in Naytahwaush for the past week. Officer Warren also testified that when he returned to Thompson's house on April 24, 2014, to conduct another compliance check, he was told by Thompson that appellant was again staying at his aunt's house in Naytahwaush. Officer Warren's testimony established that, in addition to his girlfriend's house, appellant's aunt's house constituted another secondary address.

Finally, the annual verification forms offered by the state and admitted into evidence listed Thompson's house as appellant's primary address and did not list a secondary address. The evidence presented by the state establishes that appellant knowingly violated the registration requirements by failing to provide the BCA with his secondary addresses. Accordingly, there is sufficient evidence to sustain appellant's conviction of failing to register a secondary address. And because there is sufficient evidence to support appellant's conviction of failing to register a secondary address, we need not address appellant's claim that there was insufficient evidence to support the jury's finding that appellant was guilty of failing to provide notice of a change in his primary address between January 21, 2014 through April 24, 2014. *See State v. Hurd*, 819 N.W.2d 591, 602 n.1 (Minn. 2012) (stating that appellate courts may decline to address an appellant's argument regarding an offense for which no conviction was entered).

**Affirmed.**