*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1830**


State of Minnesota,
Respondent,

vs.

Carl Raba,
Appellant.


**Filed January 11, 2016
Affirmed in part, reversed in part, and remanded
Halbrooks, Judge**


Cass County District Court
File No. 11-CR-13-2128

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Christopher J. Strandlie, Cass County Attorney, Walker, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Appellant Carl Raba raises several issues on appeal. First, he challenges the district court's denial of his motion to suppress items found in the course of his arrest. Second, Raba contends that the evidence at trial was insufficient to support his convictions of ineligible person in possession of a firearm and possession of a controlled substance. Third, Raba argues that he was improperly sentenced on the firearms convictions because the exception in Minn. Stat. § 609.035, subd. 3 (2012), does not apply here.

Because Raba had an outstanding warrant for his arrest, we conclude that the district court did not err by denying Raba's motion to suppress items that were found when the arrest occurred. We also conclude that there was sufficient evidence to support Raba's convictions of ineligible person in possession of a firearm but that the evidence was insufficient to support the conviction of possession of a controlled substance. Finally, because Minn. Stat. § 609.035, subd. 3 does not permit imposition of multiple sentences for ineligible-person-in-possession-of-a-firearm convictions that derive from a single behavioral incident, we conclude that the district court erred in sentencing Raba. Accordingly, we affirm the convictions of ineligible person in possession of a firearm, reverse the conviction of possession of a controlled substance, and remand for re-sentencing.

**FACTS**

On November 13, 2013, Investigator Tony Cyr of the Cass County Sheriff's Office received a report that a woman with an outstanding felony drug warrant was staying on property in Wilderness Park that was T.S.'s residence. Investigator Cyr dispatched Sergeant Jason Brogle and Deputy Charles Ratz to the location. The two officers arrived at the property in separate vehicles around 5:30 p.m. As Sgt. Brogle drove up to the property, he observed a man standing outside of a 24-foot, pull-behind camper. Sgt. Brogle could see the man's face because a halogen work light illuminated the area where the man was standing. The man appeared to look directly at Sgt. Brogle and then quickly turned and ran toward the camper. He entered the camper and locked the door. The officers knocked on the camper door and announced that they were looking for a woman with an outstanding felony drug warrant who was reportedly on the property. After no response, the officers started knocking on the windows and the sides of the camper.

While still outside of the camper, the officers attempted to identify the man. Deputy Ratz noticed a motorcycle nearby and ran the license plate through the registration system. As a result, the officers determined that it was registered to Raba, who had three active warrants (including a felony warrant) for his arrest. After viewing a photograph from the state's database, Sgt. Brogle identified Raba as the individual who had run into the camper.

The officers returned to the camper and resumed knocking on the door, warning Raba that if he did not come out, they would force their way in. After no response, the

3

officers located a crowbar in a nearby truck and forced the door open. They found Raba sitting on a bed behind a blanket that divided the camper into two areas. A Ruger 10/22 rifle was resting on the bed within arms-length of where Raba was sitting. Deputy Ratz arrested and handcuffed Raba. At that point, the officers believed that the woman they were originally looking for was still present in the camper. Accordingly, Deputy Ratz moved some clothing stacked next to the bed. In so doing, he found two more firearms— a Browning .270 and a Stevens .22. When they patted down Raba, the officers found bullets in his pockets that matched each of the weapons.

While still inside, the officers observed what appeared to be drug paraphernalia and what they thought was a small amount of methamphetamine in an open sunglasseses case on the kitchen table.[1] The officers seized the firearms, the methamphetamine, and the drug paraphernalia and left the camper. They did not find the woman during the initial search.

The officers ran a database search of the license plate and vehicle-identification number on the camper and learned that both the license plate and the camper had been reported as stolen. The officers also observed two four-wheelers on the property. When they ran a database search of the vehicle-identification numbers, they discovered that both had been recently reported as stolen. At that point, the officers contacted Investigator Cyr and requested that he obtain a search warrant for the property. A

---

[1] The Bureau of Criminal Apprehension later tested the substance and confirmed that it was methamphetamine.

daytime warrant was issued that was executed by police the following morning. In the interim, a deputy secured the property to ensure that no one entered or left the camper.

When the police executed the search warrant and entered the camper the following morning, they found the woman with the outstanding felony drug warrant sitting at the kitchen table. They arrested her and also found two more firearms—a pistol and a rifle.

The police searched Raba's 1998 Dodge pickup that was parked outside of the camper. Inside the vehicle, one of the officers found an empty box for a Ruger revolver and an instruction manual for that weapon. The box matched the pistol that was found in the camper. The officer also found ammunition in the pickup that matched the Ruger 10/22 rifle and the .270 Browning.

Raba had a previous conviction of a crime of violence that made him ineligible to possess a firearm. As a result, the state charged him with four counts of ineligible person in possession of a firearm based on possession of the Browning .270, Ruger 10/22 rifle, Stevens .22 rifle, and the pistol. Minn. Stat. § 624.713, subd. 1(2) (2012). Raba was also charged with one count of fifth-degree possession of a controlled substance, four counts of possession of stolen property, and one count of terroristic threats. Before trial, the district court ordered the terroristic-threats charge to be severed from the complaint, and dismissed three of the four counts of receiving stolen property.

At the omnibus hearing, Raba contested the legality of the officers' entry into the camper. He argued that the police can enter a dwelling to pursue a suspect for an arrest only when (1) it is the suspect's home and (2) there is reason to believe that the suspect is inside. In the absence of those conditions, the police need consent or another exception

5

to the warrant requirement to justify the intrusion. The state responded by arguing that the officers could enter the camper—even if it was not Raba's residence—to make a felony arrest if they had reason to believe that Raba was inside. It also argued that because Raba's expectation of privacy in the stolen camper was not reasonable, he lacked standing to object to the search. The district court denied Raba's motion to suppress the evidence found at the time of Raba's arrest.

Raba was convicted of four counts of ineligible person in possession of a firearm, one count of fifth-degree possession of a controlled substance, and one count of receipt of stolen property. Before sentencing, Raba argued that he should be sentenced for only one count of ineligible person in possession of a firearm because all four ineligible-person convictions were part of a single behavioral incident and that the exception under Minn. Stat. § 609.035, subd. 3, does not apply to separate sentences for possession-of-a-firearm charges. The district court disagreed and sentenced Raba to 60 concurrent months in prison for each of the four firearm convictions in addition to the sentences imposed for the other convictions. This appeal follows.

## D E C I S I O N

### I.

Raba argues that the district court erred by denying his motion to suppress the evidence found in the camper at the time of his arrest because, although there was an outstanding warrant for his arrest, the police did not have reason to believe that he resided there. Therefore, he asserts that the exception to the warrant requirement articulated by the Supreme Court in *Payton v. New York* does not apply. 445 U.S. 573, 603, 100 S. Ct.

6

1371, 1388 (1980). The state contends that if Raba resided in the camper, the search would have been justified under *Payton*. Further, the state argues that Raba cannot assert greater privacy rights than a person who lived in the camper could have. Thus, the entry to execute the arrest warrant was justified.

At the outset, we note that the record does not indicate who resided in the camper or the details of how or why Raba was there. But it is undisputed that (1) there was an outstanding felony arrest warrant for Raba at the time of the forced entrance into the camper, (2) the two responding officers knew about the warrant prior to entering, and (3) the police had reason to believe Raba was inside the camper, having observed him running into it. Based on this record, we conclude that the entry and limited subsequent search were justified.

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). Both the "Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution," prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless search is generally unreasonable, unless it falls into one of the recognized exceptions to the warrant requirement. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). "All evidence obtained by illegal searches is inadmissible in court and the fruits of a warrantless entry made without probable cause and [an exception to the warrant

requirement] must be suppressed." *In re Welfare of B.R.K.*, 658 N.W.2d 565, 578 (Minn. 2003) (citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961)).

One exception to the warrant requirement exists for entry into a dwelling when the police have a valid arrest warrant. *Payton*, 445 U.S. at 603, 100 S. Ct. at 1388. In *Payton*, the New York police "assembled sufficient evidence to establish probable cause to believe that Theodore Payton had murdered the manager of a gas station two days earlier." *Id.* at 576, 100 S. Ct. at 1375. They went to his apartment without a warrant intending to arrest him. *Id.* When Payton did not answer the door after the police knocked, they used crowbars to force entry. *Id.* No one was there, but the police did locate a .30-caliber shell casing that was later used at trial to convict him. *Id.* at 576-77, 100 S. Ct. at 1375. Payton challenged the legality of the entry into the apartment. *Id.* at 577, 100 S. Ct. at 1375.

The New York Court of Appeals upheld the search based on the substantial difference in the degree of intrusiveness associated with entry for purposes of making an arrest versus entry to search the premises. *Id.* at 579-80, 100 S. Ct. at 1376.

The Supreme Court reversed, recognizing that the objective of a police officer entering a home to execute a search is different from entering a home to execute an arrest, but stating that the "difference may be more theoretical than real." *Id.* at 589, 100 S. Ct. at 1381. The Supreme Court held that although an arrest warrant may afford less protection than a search warrant, "it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen" to protect the person's privacy interests. *Id.* at 602, 100 S. Ct. at 1388. "Thus, for Fourth

8

Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 603, 100 S. Ct. at 1388.

The following term, the Supreme Court was presented with the issue of whether law enforcement "may legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant." *Steagald v. United States*, 451 U.S. 204, 205, 101 S. Ct. 1642, 1644 (1981). In *Steagald*, a confidential informant provided an agent of the Drug Enforcement Administration (DEA) with a phone number to find Ricky Lyons—a federal fugitive with an outstanding arrest warrant. *Id.* at 206, 101 S. Ct. at 1644. The DEA traced the phone number to a house where Steagald resided. *Id.* Looking for Lyons, the DEA went to the house to execute the arrest warrant. *Id.* at 206-07, 101 S. Ct. at 1644-45. Without obtaining a search warrant and without consent of the person who answered the door, the DEA entered the home and saw what appeared to be cocaine. *Id.* Lyons was not present. *Id.* Based on the initial observation, the DEA obtained a search warrant and found 43 pounds of cocaine. *Id.* The DEA arrested and indicted Steagald. *Id.* at 207, 101 S. Ct. at 1645. Steagald sought to "suppress all evidence uncovered during the various searches on the ground that it was illegally obtained because the agents had failed to secure a search warrant before entering the house." *Id.*

The Supreme Court stated that "while an arrest warrant and a search warrant both serve to subject the probable-cause determination of police to judicial review, the interests protected by the two warrants differ." *Id.* at 212-13, 101 S. Ct. at 1648. "An

9

arrest warrant . . . primarily serves to protect an individual from an unreasonable seizure." *Id.* at 213, 101 S. Ct. at 1648. "A search warrant . . . safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Id.* "[W]hile the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect [Steagald's] interest in being free from an unreasonable invasion and search of his home." *Id.* Therefore, "the search of [Steagald's] home was no more reasonable from [Steagald's] perspective than it would have been if conducted in the absence of any warrant." *Id.* at 216, 101 S. Ct. at 1650.

Raba relies on *Steagald* to argue that the officers needed reason to believe that he lived in the camper in order to enter to arrest him. We disagree. In *Steagald*, the Supreme Court focused on the rights of the resident, Steagald, when the police did not have either an arrest warrant for him or a separate search warrant for the home. *Id.* at 216, 101 S. Ct. at 1649-50. Here, there is no third party challenging entry. Raba himself is. Raba's interest, like Payton's, was in being free from an unreasonable seizure. The constitutional concern for Raba's interest was satisfied by the probable-cause determination for the outstanding felony arrest warrant.

The Eighth Circuit Court of Appeals held that *Steagald* does not control the outcome when the defendant (1) does not live in the residence, (2) has a felony warrant out for his arrest, and (3) the police have reason to believe the defendant is within the residence. In *United States v. Clifford*, the defendant claimed that because he was a guest in another's home, the police had to obtain a separate search warrant to enter the home to arrest him. 664 F.2d 1090, 1092 (8th Cir. 1981). The Eighth Circuit disagreed, stating,

10

"*Steagald* provides no basis for [Clifford's] challenge to the police entry." *Id.* Under *Payton*, the police could have entered the home to execute an arrest warrant for the defendant if they had reason to believe that he was inside. *Id.* at 1093. "Clifford hardly can claim greater rights in [the occupant's] home than [the occupant] herself possessed." *Id.* The Eighth Circuit reiterated this principle eight years later in *United States v. Kaylor:* "[A person] cannot claim any greater Fourth Amendment protection in [another's] home than he possessed in his own home." 877 F.2d 658, 663 (8th Cir. 1989). Thus, "possession of a warrant for Kaylor's arrest and the officers' reasonable belief of his presence in [another's] home justified the entry without a search warrant." *Id.*

Here, the officers who responded to the initial call knew that Raba had an outstanding felony warrant prior to attempting to arrest him. One of the officers identified Raba as the person standing outside of the camper who ran inside. If Raba resided in the camper, the entry was justified under *Payton*. If he did not reside there, he cannot claim greater Fourth Amendment privacy rights than an occupant could. Therefore, we conclude that the entry was justified and that the district court did not err by denying Raba's motion to suppress the evidence found as a result of the officers' entry into the camper.

## II.

Raba argues that the state presented insufficient evidence at trial to support his convictions of the four counts of ineligible person in possession of a firearm and one count of possession of a controlled substance. "When considering a claim of insufficient

11

evidence, this court conducts a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach a verdict of guilty." *State v. Porte*, 832 N.W.2d 303, 307 (Minn. App. 2013) (quotation omitted). "We must assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary." *Id.* (quotation omitted). "[W]e will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012).

The state concedes that the convictions depended on circumstantial evidence. If a conviction depends on circumstantial evidence, this court applies a two-step heightened standard to evaluate the sufficiency of the evidence. *State v. Andersen*, 784 N.W.2d 320, 329-30 (Minn. 2010). "First, we identify the circumstances proved" while deferring to the "jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Porte*, 832 N.W.2d at 310 (quotations omitted). "Second, we examine independently the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *Id.* (quotations omitted). "Circumstantial evidence supporting a conviction must be consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). The chain formed by the circumstantial evidence must be complete, in view of the evidence as a whole, and lead "directly to the guilt of the defendant as to exclude beyond a reasonable doubt any

reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010). We do not overturn verdicts based on "mere conjecture." *State v. Stein*, 776 N.W.2d 709, 714 (Minn. 2010).

"Possession of a firearm may be proved through actual or constructive possession." *State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015). The same is true for possession of a controlled substance. *Porte*, 832 N.W.2d at 308. Neither party claims that the evidence showed that Raba had actual possession of either the firearms or the drugs. Instead, both parties focus on constructive possession. To prove constructive possession, the state

> must show either (1) that the prohibited item was found in a place under defendant's exclusive control to which other people did not normally have access, or (2) if the prohibited item was found in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it.

*Salyers*, 858 N.W.2d at 159 (quotations omitted); *see also Porte*, 832 N.W.2d at 308. "Proximity is an important factor in establishing constructive possession." *State v. Breaux*, 620 N.W.2d 326, 334 (Minn. App. 2001). "Furthermore, an item that is constructively possessed may be possessed by more than one person." *Porte*, 832 N.W.2d at 308.

The state argues that the evidence was sufficient to show that there was a strong probability that Raba at the time consciously exercised dominion over the firearms and the methamphetamine. We therefore focus our analysis on whether the evidence was

13

sufficient to demonstrate a strong probability that Raba consciously exercised dominion over the items.

## A. The Firearms

### 1. Count 1, possession of Browning .270.

The Browning .270 was one of two rifles found beneath a stack of clothes next to the bed Raba was sitting on. Both Sgt. Brogle and Deputy Ratz testified that in the course of the post-arrest pat-down search of Raba's pockets, they found .270 ammunition that was usable in the Browning. Investigator Cyr testified that he found .270 ammunition when he searched Raba's truck the following morning. Given Raba's close proximity to the Browning .270 when he was arrested, coupled with the fact that ammunition for that gun was found in his pockets and truck, the reasonable and rational hypothesis is that there is a strong probability that Raba was consciously exercising dominion over it (i.e., he possessed it). We therefore conclude that the evidence presented at trial was sufficient to convict him of count 1 of ineligible person in possession of a firearm.

### 2. Count 2, possession of Ruger 10/22 rifle

Both Sgt. Brogle and Deputy Ratz testified that the Ruger 10/22 was lying on the bed within Raba's arm's reach when he was found. They stated that some of the ammunition that they found in his pockets during the pat-down was also usable in the Ruger 10/22. Further, Investigator Cyr testified that he found .22-caliber ammunition in Raba's truck that was usable in the Ruger 10/22. The only reasonable and rational

14

hypothesis is that Raba possessed the Ruger 10/22. The evidence at trial was sufficient to convict him of count 2 of ineligible person in possession of a firearm.

### 3. Count 3, possession of Stevens .22

The state presented similar evidence for the Stevens .22 as it did for the Browning .270. Both Sgt. Brogle and Deputy Ratz testified that they found the weapon in the stack of clothes next to the bed that Raba was sitting on. They also stated that they found ammunition that could be used in the rifle both in Raba's pockets and in his truck. The only reasonable inference is that he possessed the firearm. The evidence at trial was sufficient to convict him of count 3 of ineligible person in possession of a firearm.

### 4. Count 4, possession of Ruger pistol

The Ruger pistol was not located during the initial search of the camper. But Deputy Scott Rollins testified that he was posted outside of the camper all night and was certain that no one had entered or left the camper. The following morning when the officers executed the search warrant, they found the Ruger pistol and the woman they originally were searching for. Whether or not the woman also possessed the pistol, the pistol was tied to Raba by the testimony of Sgt. Brogle and Deputy Ratz that the previous night they found ammunition in Raba's pockets and in his truck that could be used in the pistol. In addition, when Investigator Cyr searched Raba's truck, he found the box and instructions for the pistol. The location of the gun box in his truck combined with the ammunition in his pocket eliminates any reasonable hypothesis other than that Raba possessed the firearm either individually or jointly with the woman. We therefore

conclude that the state presented sufficient evidence to support a conviction of count 4 of ineligible person in possession of a firearm.

## B.  The Controlled Substance

Sgt. Brogle and Deputy Ratz seized the methamphetamine at the time that they arrested Raba.  At trial, the state entered into evidence a photograph of the sunglasses case where the methamphetamine and pipe were found.  That photograph depicted a small amount of methamphetamine in a plastic bag and in the pipe.  Both Sgt. Brogle and Deputy Ratz testified that the sunglasses case was on the kitchen table in the camper.  But the pipe was not tested for DNA or fingerprints and there was no evidence at trial tying Raba directly to the drugs.

On this record, there is a reasonable and rational hypothesis that does not support guilt.  The police found a single pipe with a minimal amount of methamphetamine left inside of it.  The state failed to tie Raba to the drugs or the drug paraphernalia other than by the mere fact that they were in the camper when Raba was arrested.  But the woman was also in the camper.  Such minimal ties do not support only one reasonable and rational hypothesis of guilt.  Instead, the circumstances support a reasonable inference that the woman may have possessed the items.  We therefore conclude that the state did not present sufficient evidence to support Raba's conviction of fifth-degree possession of a controlled substance.  That conviction is reversed.

## III.

The district court imposed four concurrent 60-month sentences for the four firearm convictions.  Raba argues that the district court erred because the four convictions arose

16

out of a single behavioral incident. The state concedes that the offenses occurred during a single behavioral incident, but contends that the statutory exception for firearm offenses in Minn. Stat. § 609.035, subd. 3, permits multiple sentences for ineligible-person-in-possession-of-a-firearm convictions even if they occur as part of a single behavioral incident. Section 609.035 provides:

> [I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. . . .
>
> . . . .
>
> . . . [A] prosecution for or conviction of a violation of section 609.165 or 624.713, subdivision 1, clause (2), is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct.

Minn. Stat. § 609.035, subds. 1, 3 (2012).

Statutory construction is a question of law, which we review de novo. *State v. Koenig*, 666 N.W.2d 366, 372 (Minn. 2003). Resolution of this issue turns on the phrase "any other crime" in Minn. Stat. § 609.035, subd. 3. While the phrase has not been addressed in the context of Minn. Stat. § 609.035 (2012), the Minnesota Supreme Court interpreted the same phrase in the context of the burglary exception to the single-behavioral-incident rule. *See State v. Holmes*, 778 N.W.2d 336, 340-41 (Minn. 2010) (interpreting Minn. Stat. § 609.585 (2008)).

The question before the supreme court was whether Holmes was properly sentenced for his convictions of aiding and abetting first-degree burglary with assault and aiding and abetting third-degree assault. *Id.* at 338. It was undisputed that both

17

convictions arose from a single behavioral incident. *Id.* at 339. The supreme court stated that "Minnesota law generally prohibits a person from being punished twice for conduct that is part of the same behavioral incident, with certain exceptions." *Id.*

Minn. Stat. § 609.585 (2012), addressing the crime of burglary, contains an exception to the general prohibition against multiple sentences that contains the "any other crime" language that appears in Minn. Stat. § 609.035, subd. 3. In *Holmes*, the supreme court stated:

> We read the statute to allow a conviction of another crime committed in the same course of conduct as the burglary, provided that the statutory elements of that crime are different than the crime of burglary. The phrase "any other crime" means a crime that requires proof of different statutory elements than the crime of burglary.

*Id.* at 341.

Because the elements of the crimes of which Holmes was convicted were not identical, the supreme court held that Holmes could be convicted of and sentenced for both convictions. *Id.*

Here, Raba was convicted of four counts of ineligible person in possession of a firearm that required the state to prove the same elements for each conviction. Therefore, based on *Holmes*, the exception in Minn. Stat. § 609.035, subd. 3 is not applicable. Because we conclude that the district court erred when it sentenced Raba separately on each conviction of ineligible person in possession of a firearm, we reverse and remand to the district court for resentencing.

**Affirmed in part, reversed in part, and remanded.**